DR. ROBERT C. GUNTHER v. BLUE CROSS/BLUE SHIELD OF NORTH CAROLINA

No. 8128SC810

(Filed 20 July 1982)

1. Trial § 57— nonjury trial—incompetent evidence presumed disregarded by judge

In a nonjury trial, it is presumed that if incompetent evidence was admitted, it was disregarded and did not influence the judge's findings, and defendant failed to rebut this presumption by showing that the judge acted upon incompetent evidence in finding the facts.

2. Trial § 58— exceptions not bolstered by authority—findings supported by evidence

In a nonjury trial concerning the coverage of a medical insurance policy where defendant excepted to the admission of certain evidence as being incompetent but neither bolstered its assignment of error by citation of authority nor addressed the matters admitted on cross examination, appellant's assignments of error were overruled and the court's findings were found to be supported by the evidence.

3. Evidence § 29.4— reading from medical text—failure to lay proper foundation—not prejudicial

Although, under G.S. 8-40.1, plaintiff had failed to lay a proper foundation for the reading of a medical text, the error was not prejudicial since two of defendant's exhibits were also taken from the same medical text and defendant's own psychiatric expert described the manual as reliable and authoritative.

4. Insurance § 43.1— health insurance policy—using wrong word in findings—nonprejudicial

In an action to recover hospitalization benefits for plaintiff's son's mental illness, the trial court erred in referring to a section of the policy as stating that benefits were provided for "the diagnosis or treatment of illness, injury, or restoration of *psychological* functions" since the policy referred to

physiological functions; however, the inaccuracy of syntax was not prejudicial since the contested expenses were incurred for the treatment of a mental *illness*.

APPEAL by defendant from *Ferrell, Judge.* Judgment entered 24 April 1981, Superior Court, BUNCOMBE County. Heard in the Court of Appeals 31 March 1982.

Plaintiff, by his complaint dated 27 August 1979, alleged that he and his dependents were insured against certain medical expenses under a contract of insurance entered into with defendant. He alleged that his dependent, Karl Gunther, was hospitalized from 14 July 1978 to June 1979 in Highlands Hospital, Asheville, and that defendant was obligated to pay a portion of the expenses of the hospitalization; but that defendant had paid only a portion of the expenses for which it was obligated, and that it failed and refused to pay to the full extent obligated under the terms of the contract of insurance. He prayed for the recovery of $16,257.20, costs of the action, and attorney's fees.

Defendant admitted that plaintiff was provided certain coverage under one of its group benefit plans, but averred that it had provided appropriate coverage under the provisions of the policy. Defendant stated that the expenses sought to be recovered by plaintiff were specifically excluded under the terms of the Certificate of Health Insurance upon which the action was based. Defendant counterclaimed for reimbursement of $8,942.25 for certain services and supplies paid to third parties for the benefit of plaintiff.

The court found, based on the evidence and stipulations, that plaintiff's son, Karl, had been hospitalized in Highlands Hospital from 11 July 1978 to 14 July 1979 for treatment of mental illness, specifically classified as borderline personality. The court found that Karl displayed sufficient symptoms of the condition to be so categorized. Its judgment included a finding that during his hospitalization Karl received individual and group psychotherapy, activity therapy, and attended a psychotherapeutic school. The court determined that the insurance policy in question provided benefits for his hospitalization through 30 May 1979, but that Section 502A(2) of the policy excludes expenses that are "not reasonable and necessary for the diagnosis or treatment of illness, in-

jury or restoration of psychological function, or for custodial or domiciliary care." The court found further

8. That there is no agreement among the psychiatric profession as to the method of treatment of a borderline personality; that is to say, whether or not said disorder should be treated by long-term hospitalization or by outpatient treatment on a crisis intervention basis, both methods being used;

9. That the policy in question does not define the term "reasonable and necessary for the diagnosis or treatment of injury, illness or restoration to psychological function" or the term "custodial and domiciliary care", and the Court construes said terms to require that hospitalization be more than merely maintaining a patient, but that there must be either medical treatment for the purposes of establishing the diagnosis of the patient's illness, or reasonable medical treatment which could or may alleviate or reduce the illness or its symptoms;

10. That the hospitalization of Karl Gunther did not come within the exclusions herein set forth in said policy at any time prior to May 30, 1979.

Based on his findings, the judge found that benefits accorded Karl were not within the exclusion of the policy. He then awarded plaintiff $16,257.20, the total amount due by defendant for Karl's hospitalization through 30 May 1979. Defendant appeals.

*Riddle, Shackelford and Hyler, by John E. Shackelford, for plaintiff appellee.*

*Jackson, Jackson and Bennington, by Frank B. Jackson, for defendant appellant.*

MORRIS, Chief Judge.

Defendant brings forward 17 assignments of error, the first five of which question the admissibility of certain evidence adduced at trial.

[1] Defendant contends that the trial court erred by denying defendant's motion to strike testimony given by plaintiff on direct examination by which plaintiff indicated that Mr. Don McIntire, a

representative of defendant, told him in January of 1980 that Karl Gunther would receive benefits for one year's hospitalization, to a maximum of $250,000. Defendant argues that no proper foundation establishing Mr. McIntire's actual, apparent, or implied authority to speak for defendant was laid and that plaintiff's assertion as to what Mr. McIntire told him was, therefore, inadmissible hearsay. The judge made no finding of fact based on the testimony. Indeed, the judgment granted benefits only through 30 May 1979, though Karl was hospitalized from July 1978 until July 1979. In a nonjury trial, it is presumed that if incompetent evidence was admitted, it was disregarded and did not influence the judge's findings. *Bizzell v. Bizzell,* 247 N.C. 590, 101 S.E. 2d 668 (1958). Defendant has failed to rebut this presumption by showing that the judge acted upon incompetent evidence in finding the facts. The assignment is overruled.

[2] Defendant, by his second assignment, maintains that the court erred in admitting into evidence the affirmative response of Dr. Darwin Dorr, a clinical psychologist, when asked on direct examination whether prolonged hospitalization was a recognized method of treating a borderline personality. Defendant argues that neither the question nor the answer elicited specified what group or individual endorsed that method of treatment.

He asserts by his third assignment that the court erred in admitting the testimony of Dr. Richard Selman, a psychiatrist, that certain treatment rendered by him was medically necessary without qualification as to the time periods involved, since a fundamental issue in dispute was whether the hospitalization of Karl Gunther subsequent to 12 December 1978 was medically necessary and whether the nature of the treatment he received was excluded under the terms of the policy. It is evident to us from the record, however, that the time to which the witness referred begins 5 February 1979, when Dr. Selman first made a diagnosis of borderline personality, and the period of hospitalization thereafter.

Defendant fails to bolster either assignment by citation of authority, and we are unaware of any supporting authority for the exceptions taken. These matters could easily have been addressed by defense counsel on cross examination. The court's find-

ings are fully supported by the evidence adduced. Appellant's assignments of error numbers 2 and 3 are, accordingly, overruled.

[3] Defendant bases his next two assignments upon G.S. 8-40.1. He alleges that the court erred in admitting a reading by Dr. Selman from the American Psychiatric Association's *Diagnostic and Statistic Manual III,* plaintiff's exhibit 3. He points to plaintiff's failure to lay a foundation establishing the manual as a reliable authority, the lack of an agreement between counsel for the parties to receive the exhibit, and its substantive nature, and assigns error to its admission into evidence. G.S. 8-40.1 provides:

> In all actions in the district and superior courts to the extent called to the attention of an expert witness upon cross-examination or relied upon by him in direct examination, the hearsay rule shall not exclude statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice, even though the declarant is available as a witness. If admitted, the statements may be read into evidence but may not be received as exhibits unless agreed to by counsel for the parties.

We hold that any error that may have been committed by the introduction of the evidence in question was not prejudicial. Defendant's exhibits 3 and 4 were also taken from the *Diagnostic and Statistic Manual,* and his own psychiatric expert, Dr. Hans Lowenbach, described the manual as reliable and authoritative. It is unnecessary to attempt to gauge the impact of the attorneys' failure to agree to receive the exhibit, or to classify the evidence as either illustrative or substantive, as there was plenary additional evidence upon which the court could have made its findings of fact. Assignments of error numbers 4 and 5 are overruled.

Defendant excepts to several of the court's findings of fact, contending that the evidence is insufficient to support them. We have examined the record carefully, and find, on the contrary, that the questioned findings numbered 2, 3, 4, 5, 6 and 8 are supported by the pleadings, stipulations, and evidence. Defendant's assignments of error numbers 6 through 11, based on exceptions to those findings, are therefore overruled.

[4]   Defendant next argues that the court erred in its findings of fact numbers 9 and 10, alleging that the evidence was insufficient to support them. We disagree. Section 502 of the policy states:

A.   Except as may be otherwise specifically provided, no benefits are provided under this certificate for:

. . .

(2) Services or supplies . . . (2) not reasonable and necessary for the diagnosis or treatment of illness, injury, or restoration of physiological functions . . . (3) for custodial and domiciliary care, . . . .

We note that the policy language refers not to the "psychological" rehabilitation to which the court referred in its judgment, but to the restoration of "physiological" function. The judge's mistake in this regard was not harmful to defendant, however. Since the phrase in question excludes services or supplies not reasonable and necessary for the diagnosis or treatment of "*illness*, injury, or restoration of physiological functions . . ." (emphasis added), the finding must be regarded as superfluous to the extent the court used the wrong word, the contested expenses having been incurred for the treatment of a mental *illness*, nevertheless. The finding is apposite, and we find this inaccuracy of syntax to be nonprejudicial.

Defendant submits that the court erred in its finding and conclusion of law based thereon when it chose to formulate its own definition of the terms "custodial" and "domiciliary" care, in the face of testimony from defendant's expert, Dr. Lowenbach, that care is custodial if the patient's condition is such that "in spite of adequate treatment for an adequate length of time, there is no reasonable likelihood to expect that a person can live outside of an institution giving such care without relapsing into the same symptomatology," and his explanation that "domiciliary" care was the replacement of an unsuitable home with a suitable one. Moreover, defendant argues that the court erred in its findings and conclusion that Karl's hospitalization did not come within the exclusion in the policy any time before 30 May 1979, as his treatment after 12 December should have been excluded pursuant to the definitions of custodial and domiciliary care espoused by Dr. Lowenbach, and that the court erred by its failure to render judgment for him on his counterclaim.

The defendant had the burden of proving that the expenses incurred for Karl's hospitalization came within the stated exception of the policy. *See Flintall v. Charlotte Liberty Mutual Insurance Co.*, 259 N.C. 666, 131 S.E. 2d 312 (1963). Applying even the restrictive interpretations of the exclusionary language espoused by defendants, the evidence supports the judge's finding that Karl's hospitalization should not be excluded from coverage. Dr. Selman testified that he decided in February that Karl

> needed to remain in the hospital for four or five more months, to be able to make the progress enough to be able to continue his treatment on an outpatient basis. We discussed the fact that he would need to be in treatment for a long period of time, and that the initial part of that would need to be in the hospital. The treatment plan I have initially conceived when he was admitted to the hospital, that is activity therapy, group therapy, and psychotherapy would be continued, throughout his hospitalization this initial plan remained intact.

Though there was some evidence that Karl's continued hospitalization depended upon plaintiff's resolution of certain personal and family problems, other evidence was sufficient to allow the judge to find that continued treatment in the hospital was medically necessary. Defendant's assignments of error numbers 12 through 17 are without merit.

The judgment of the trial court is, based on the above,

Affirmed.

Judges HEDRICK and VAUGHN concur.