TOWN OF GREEN LEVEL, a NORTH CAROLINA MUNICIPAL CORPORATION, PLAINTIFF-APPELLANT v. ALAMANCE COUNTY, a BODY POLITIC AND CORPORATE, DEFENDANT-APPELLEE

No. COA06-1304

(Filed 17 July 2007)

**1. Cities and Towns— extraterritorial jurisdiction ordinance—arbitrary and capricious act**

The trial court erred in a declaratory judgment action by concluding that defendant county had enacted and enforced zoning in plaintiff town's proposed extraterritorial jurisdiction (ETJ) by its 1997 Watershed Protection Ordinance. The county acted arbitrarily and capriciously when it enacted a 2004 amendment to the ordinance, and plaintiff town was not precluded from extending its ETJ under N.C.G.S. § 160A-360(e), because no evidence was presented at trial to show that defendant enacted the 2004 amendment for a health, safety, or welfare purpose.

### 2. Appeal and Error— preservation of issues—failure to argue—absence of ruling

Although defendant county contends that plaintiff's extraterritorial jurisdiction ordinance will not result in the meaningful extension of land use powers by plaintiff, this cross-assignment of error is overruled, because the issue was not properly preserved under N.C. R. App. P. 10(d) when: (1) defendant failed to argue this issue at trial when arguing its motion to dismiss; (2) defendant did not list this issue as part of its pretrial order, and it cannot be determined from the order whether the trial court was presented with any argument on this issue or whether the trial court made any ruling on this issue; and (3) no mention of this issue is made in the trial court's judgment.

### 3. Appeal and Error— preservation of issues—failure to argue—absence of ruling

Although defendant county contends that plaintiff's extraterritorial jurisdiction ordinance is invalid based on plaintiff's failure to timely adopt official plans under N.C.G.S. § 160A-360(b), this cross-assignment of error is overruled because the issue was not properly preserved under N.C. R. App. P. 10(d) and there was no ruling on this issue in the record.

### 4. Evidence— expert testimony—question of law—presumed that incompetent evidence disregarded in nonjury trial

Although defendant county contends the trial court erred in a declaratory judgment action by improperly admitting the testimony of plaintiff's expert witness regarding questions of law, this cross-assignment of error is overruled because: (1) assuming arguendo that the testimony was improper, a review of the trial court's judgment does not reveal that the expert's testimony was used to support its findings and conclusions; (2) the trial court's findings and conclusions were in fact contrary to the expert's testimony; and (3) in a nonjury trial, it is presumed that if incompetent evidence was admitted, it was disregarded and did not influence the judge's findings.

Appeal by Plaintiff from judgment entered 9 May 2006 by Judge Narley L. Cashwell in Superior Court, Alamance County. Heard in the Court of Appeals 25 April 2007.

*Kennedy Covington Lobdell & Hickman, L.L.P., by Eric M. Braun and Ann M. Anderson, for Plaintiff-Appellant.*

*Nexsen Pruet Adams Kleemeier, PLLC, by David S. Pokela; and Alamance County Attorney David I. Smith, for Defendant-Appellee.*

*Asheville City Attorney Robert W. Oast, Jr. for the City of Asheville, amicus curiae.*

McGEE, Judge.

The town of Green Level (Green Level) filed a complaint on 18 June 2004 seeking a declaratory judgment (1) validating an ordinance enacted by the Green Level Town Council extending Green Level's extraterritorial jurisdiction (the ETJ ordinance); and (2) invalidating Alamance County's (the County) enactment of an amendment to its Watershed Protection Ordinance (the 2004 ordinance). The ETJ ordinance and the 2004 ordinance purported to assert jurisdiction over the same geographic area (the proposed ETJ area). After a bench trial, the trial court entered judgment on 9 May 2006 in favor of the County.

The evidence at trial tended to show that Green Level and the County each asserted jurisdiction over the proposed ETJ area. Green Level contended that when the County learned that Green Level was taking steps to extend its ETJ, the County enacted the 2004 ordinance, which covered the same area, solely to thwart Green Level's expansion. Green Level further argued that in enacting the 2004 ordinance, the County acted for an improper purpose under our zoning enabling statutes. The County contended that it was responding to a request by citizens residing in the proposed ETJ area to rezone the property, and that the 2004 ordinance was not enacted for an improper purpose.

The uncontroverted facts show that Green Level began researching the statutory process to extend its extraterritorial jurisdiction (ETJ) in or around July 2003. Green Level received a letter from the County dated 19 December 2003. The letter stated the County's position that, pursuant to N.C. Gen. Stat. § 160A-360(e), Green Level was required to obtain the County's permission to extend its ETJ into the proposed ETJ area. After researching the matter, Green Level's Town Administrator, Quentin McPhatter, disagreed with the County's position. Green Level and the County met to discuss the issue, but could not reach an agreement. Green Level initially scheduled a public hearing for 6 May 2004, but moved the public hearing to 22

April 2004 after learning that the County was taking steps to prevent Green Level from proceeding with the ETJ ordinance. Green Level sent the required notices to the affected citizens and published the required legal notices. Green Level enacted the ETJ ordinance on 22 April 2004.

Meanwhile, the County began the process of amending its existing Watershed Protection Ordinance (the 1997 ordinance). The 11 March 2004 minutes of the Alamance County Planning Board show that a citizens' group called "Citizens Against ETJ Expansion" expressed its opposition to Green Level's proposed ETJ expansion. The group requested that the County "zone their property." An Agenda Item Profile, prepared for the 19 April 2004 meeting of the Alamance County Board of Commissioners (the Board) stated that "the Planning Board voted 12 to 2 to instruct staff to come up with a way to extend county zoning into an unzoned area between the current watershed zoning and the city limits of Green Level[.]" The 19 April 2004 minutes of the Board show that a public hearing was held on the 2004 ordinance and was unanimously approved by the Board. The minutes also show that several individuals spoke in favor of the 2004 ordinance, stating that it was "set up to protect the water and to prevent towns from encroaching on the lakes." Others commented that they "want[ed] to live in a rural setting, not a town; that Green Level cannot control what it has; and that Green Level has nothing to offer except taxes."

A bench trial was held on Green Level's complaint on 20 March 2006 and 10-11 April 2006. In its judgment entered 9 May 2006, the trial court made several relevant conclusions of law. First, the trial court concluded that the 1997 ordinance was a "zoning ordinance." Alternatively, the trial court concluded that the 2004 ordinance (1) was enacted in accordance with the County's comprehensive plan; (2) promoted the health and general welfare of the County; (3) was enacted after reasonable consideration was given to Green Level's expansion, development, and orderly growth; and (4) was not arbitrary and capricious. Therefore, the trial court concluded that pursuant to N.C. Gen. Stat. § 160A-360(e), Green Level was precluded from extending its ETJ. The trial court further concluded that Green Level's ETJ ordinance was not valid or enforceable. Green Level and the County each bring assignments of error before this Court.

When a judgment has been rendered in a non-jury trial, our standard of review is whether there is competent evidence to support the trial court's findings of fact and whether the findings support

the conclusions of law and ensuing judgment. Findings of fact are binding on appeal if there is competent evidence to support them, even if there is evidence to the contrary.

*Sessler v. Marsh*, 144 N.C. App. 623, 628, 551 S.E.2d 160, 163 (citation omitted), *disc. review denied*, 354 N.C. 365, 556 S.E.2d 577 (2001). We review *de novo* the trial court's conclusions of law. *Huyck Corp. v. Town of Wake Forest*, 86 N.C. App. 13, 15, 356 S.E.2d 599, 601 (1987), *aff'd per curiam*, 321 N.C. 589, 364 S.E.2d 139 (1988).

## I.

[1] Green Level argues (1) that the 2004 ordinance was enacted arbitrarily and capriciously and for a purpose not authorized by the zoning enabling statutes; (2) that the 2004 ordinance was not enacted "with reasonable consideration to expansion and development of [Green Level] so as to provide for [Green Level's] orderly growth" as required by N.C. Gen. Stat. § 153A-341; (3) that the County was not enforcing zoning over the proposed ETJ area; and (4) that the prior jurisdiction rule invalidates the County's action. We conclude that the trial court erred by concluding that the County had enacted and enforced zoning in the proposed ETJ area by way of the 1997 ordinance. We also conclude that the County acted arbitrarily and capriciously when it enacted the 2004 ordinance.

N.C. Gen. Stat. § 160A-360(e) (2005) governs the conditions under which a municipality may extend its ETJ. This statute provides:

No city may hereafter extend its extraterritorial powers under this Article into any area for which the county at that time has adopted and is enforcing a zoning ordinance and subdivision regulations and within which it is enforcing the State Building Code. However, the city may do so where the county is not exercising all three of these powers, or when the city and the county have agreed upon the area within which each will exercise the powers conferred by this Article.

*Id.* Green Level and the County stipulated that the County was enforcing subdivision regulations and the State Building Code in the proposed ETJ area. Therefore, if the County was enforcing a zoning ordinance in the proposed ETJ area under the 1997 ordinance or under the 2004 ordinance, then Green Level was precluded from extending its ETJ without the County's permission.

## A. The 1997 ordinance

In 1987, the County adopted a Watershed Protection Ordinance. The 1997 ordinance amended this Watershed Protection Ordinance. The trial court made the following conclusions of law relevant to the 1997 ordinance:

1. The 1997 Ordinance expressly created watershed "zones" and regulated land use and development, like zoning does, in certain districts, areas or zones of the county, to wit: stream buffer zones, watershed critical zones and balance of watershed zones.

2. Boyds Creek and the stream-fed ponds which are perennially full are subject to the buffers provided for by section 204 of the 1997 Ordinance.

3. The 1997 Ordinance, including Section 204 relating to stream and pond buffers, constitutes a zoning ordinance.

4. Plaintiff Town of Green Level was precluded under N.C. Gen. Stat. § 160A-360(e) from extending its extra territorial jurisdiction to the proposed ETJ Area because defendant Alamance County had already adopted and was enforcing a zoning ordinance (in the form of the 1997 Ordinance) and subdivision regulations as well as enforcing the State Building Code within the proposed ETJ Area prior to the enactment of the ETJ Ordinance on April 22, 2004.

We conclude that these conclusions of law were erroneous.

In order for a county to exercise its zoning authority, N.C. Gen. Stat. § 153A-344(a) (2005) mandates that a county "create or designate a planning agency" which "shall prepare a proposed zoning ordinance, including both the full text of such ordinance and maps showing proposed district boundaries." Thus, both the text of an ordinance and a map showing proposed district boundaries are required:

[A] zoning ordinance must contain a map as well as detailed textual instructions. First, the text of the ordinance describes what land uses are permitted in each district, what development standards have to be met in that district, and the like. . . . Second, a map places the land in the jurisdiction into various zoning districts. This map is an official part of the zoning ordinance.

David W. Owens, *Introduction to Zoning* 23-24 (2nd ed. 2001). The County argues that the proposed ETJ area was zoned because the

1997 ordinance established (1) the watershed critical district; (2) the balance of the watershed district; and (3) stream buffers. Further, because the proposed ETJ area contained Boyds Creek, and a number of ponds, the County contends the area was therefore zoned for purposes of N.C. Gen. Stat. § 160A-360(e). We disagree.

Section 201 of the 1997 ordinance is entitled "Establishment of Watershed Zones" and provides:

> The purpose of this Section is to list and describe the watershed zones herein adopted. For purposes of this Ordinance, watersheds in Alamance County are hereby divided into the following zones, as appropriate:
>
> Watershed Critical Area (WCA)
>
> Balance of Watershed (BOW)

Ex. 17, p.4. Section 204 of the 1997 ordinance is entitled "Stream Buffer" and provides:

> A fifty foot (50') stream buffer shall be maintained on both sides of all perennial streams at all times to retard rapid water runoff and soil erosion. Perennial streams are identified as the solid blue lines on United States Geological Survey (U.S.G.S.) maps.

The 1997 ordinance also provides in Section 101 that its provisions "shall be defined and established on the maps entitled, 'Watershed Protection Map of Alamance County, North Carolina' . . . which is adopted simultaneously herewith." A review of the map entitled "Watershed Protection Map of Alamance County" reveals two shaded areas. The watershed critical area is shaded in pink, and the balance of watershed area is shaded in blue.

In light of the text of the 1997 ordinance and the corresponding map, we cannot conclude that the 1997 ordinance extended zoning into the proposed ETJ area. The language of Section 201 of the 1997 ordinance states that its purpose is to "list and describe" the watershed zones established by the ordinance, yet nothing in that section refers to stream buffers. Moreover, the provisions which follow Section 201 describe in detail the watershed critical area and the balance of watershed areas, and list allowed uses, prohibited uses, and density limits. No such description appears in the 1997 ordinance for stream buffers, which the County argues constituted zoning in the proposed ETJ area. Additionally, the proposed ETJ area is unshaded on the Watershed Protection Map adopted as part of

the 1997 ordinance. No stream buffers are shown on the map, nor does the legend contain any designation for streams or stream buffers. Craig Harmon (Harmon), the County's Planning Manager, admitted at trial that neither the watershed critical area nor the balance of watershed overlapped with the proposed ETJ area. Furthermore, although the County also used U.S. Geological Survey (U.S.G.S.) maps, the U.S.G.S. maps were not part of the 1997 ordinance, and in fact, were not maintained or controlled by the County. Therefore, the U.S.G.S. maps could not supply the required map. We are unable to conclude that the 1997 ordinance applied zoning to the proposed ETJ area and we reverse the trial court's relevant findings of fact and conclusions of law.

## B. The 2004 ordinance

Next, we consider whether the trial court properly concluded that, pursuant to N.C. Gen. Stat. § 160A-360(e), the County's adoption of the 2004 ordinance precluded Green Level from extending its ETJ. Green Level argues that the 2004 ordinance is invalid because (1) the ordinance was enacted arbitrarily and capriciously, and not for a purpose authorized by the enabling statute; and (2) the ordinance was not enacted with reasonable consideration to Green Level's expansion and development as required by N.C. Gen. Stat. § 153A-341. In support of its arbitrary and capricious argument, Green Level contends that no evidence was presented at trial to show that the County enacted the 2004 ordinance for a health, safety, or welfare purpose. For the reasons set forth below, we must agree.

At the time the 2004 ordinance was enacted, N.C. Gen. Stat. § 153A-340(a) (2003) stated that a county could enact various types of zoning regulations "[f]or the purpose of promoting health, safety, morals, or the general welfare[.]" N.C. Gen. Stat. § 153A-341 (2003) provided:

Zoning regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, panic, and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; and to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements. The regulations shall be made with reasonable consideration as to, among other things, the character of the district and its peculiar suitability for particular uses, and with a view to

conserving the value of buildings and encouraging the most appropriate use of land throughout the county. In addition, the regulations shall be made with reasonable consideration to expansion and development of any cities within the county, so as to provide for their orderly growth and development.

Our Supreme Court has stated:

Counties are creatures of the General Assembly and have no inherent legislative powers. They are instrumentalities of state government and possess only those powers the General Assembly has conferred upon them.

*Craig v. County of Chatham*, 356 N.C. 40, 44, 565 S.E.2d 172, 175 (2002) (citations omitted). "County commissioners are authorized to rezone property when reasonably necessary to promote the public health, safety, morals, and welfare; however, this authority may not be exercised in an arbitrary or capricious manner." *Gregory v. County of Harnett*, 128 N.C. App. 161, 164, 493 S.E.2d 786, 788 (1997). A zoning ordinance is presumed valid, and the burden to show otherwise falls upon its challenger. *Durham County v. Addison*, 262 N.C. 280, 282, 136 S.E.2d 600, 602 (1964). Further, although N.C. Gen. Stat. § 153A-4 "mandate[s] that grants of authority to local governments be broadly interpreted, zoning authority cannot be exercised in a manner contrary to the express provisions of the zoning enabling authority." *County of Lancaster v. Mecklenburg County*, 334 N.C. 496, 509, 434 S.E.2d 604, 613 (1993). "Any action of a local unit of government that disregards these fundamental zoning concepts may be arbitrary and capricious." *Gregory*, 128 N.C. App. at 164, 493 S.E.2d at 788.

It is well established that the grant or denial of a rezoning request is purely a legislative decision which will be deemed arbitrary and capricious if "the record demonstrates that it had no foundation in reason and bears no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense."

*Ashby v. Town of Cary*, 161 N.C. App. 499, 503, 588 S.E.2d 572, 574 (2003) (quoting *Graham v. City of Raleigh*, 55 N.C. App. 107, 110, 284 S.E.2d 742, 744 (1981)).

In *Gregory*, this Court concluded that the Harnett County Board of Commissioners had acted arbitrarily and capriciously when they approved a rezoning application only three days after denying a sim-

ilar application. *Id.* at 164-65, 493 S.E.2d at 788-89. We stated that "there [was] no evidence in the record showing that the Commissioners considered the character of the land, the suitability of the land for the uses permitted in the proposed zoning district, the comprehensive plan, or the existence of changed circumstances justifying the rezoning application." *Id.* at 165, 493 S.E.2d at 789. We find the present case to be similar.

The Agenda Item Profile detailed the action before the 19 April 2004 meeting of the Board and stated that after hearing the citizens' group request, "the Planning Board voted 12 to 2 to instruct staff to come up with a way to extend county zoning into an unzoned area between the current watershed zoning and the city limits of Green Level[.]" Harmon testified that he prepared this profile. Further, the minutes of the 19 April 2004 meeting of the Board reveal that Harmon stated that "a group of citizens presented a petition to the Planning Board asking the County to help in their effort to keep Green Level from extending an Extraterritorial Jurisdiction . . . into their area of the county." The minutes continue:

> The Planning Board instructed staff to look into the issue to come up with a way to put zoning into that area of the county. . . . Mr. Harmon stated the major change [in the 2004 ordinance] is that a new zone is added, the Rural Community District (RCD), which is similar to the Balance of Watershed (BOW) zone that already exists.

Additionally, the legal notice sent by the County to the property owners in the proposed ETJ area stated:

> During the March 2004 Alamance County Planning Board meeting, a community group (Citizens Against ETJ Expansions) brought a petition before the board asking the county to extend zoning into its community. This community group hopes that by [the] county extending zoning into this area it will prevent the Town of Green Level from establishing an ETJ (Extraterritorial Jurisdiction) in their area.

No mention of the County's comprehensive plan was made in the minutes of the meeting at which the County adopted the 2004 ordinance. Although the minutes reflect that members of the audience supported the 2004 ordinance because it "was set up to protect the water," the record lacks any evidence to support that statement. Harmon testified that he could not identify any references to the com-

prehensive plan in the minutes of any meetings of the planning board, or in the minutes of any meetings of the Board, nor in the "agenda packets, public notice letters, or any other item . . . prepared in relation" to the 2004 ordinance.

Further, the County argues that the 2004 ordinance promoted the public welfare by preserving rural property uses, but the testimony of Harmon, as the Rule 30(b)(6) designee of the County, contradicts this contention. Harmon testified that automobile manufacturing plants, chemical manufacturing plants, meat-packing plants, and construction and debris landfills were permitted uses in the proposed ETJ area under the 2004 ordinance, and that "[s]ome of those uses [are] probably not" consistent with a rural community character.

For the above reasons, we conclude that the enactment of the 2004 ordinance was arbitrary and capricious and that the trial court erred by concluding otherwise. Therefore, since the 1997 ordinance did not extend zoning into the proposed ETJ area, and the 2004 zoning ordinance was enacted arbitrarily and capriciously, we conclude that Green Level was not precluded from extending its ETJ pursuant to N.C. Gen. Stat. § 160A-360(e).

II.

Because we conclude that neither the 1997 ordinance nor the 2004 ordinance precluded Green Level from extending its ETJ, we now determine the County's cross-assignments of error.

A. Meaningful extension of land use powers

[2] The County argues that because Green Level's "ETJ ordinance will not result in the meaningful extension of land use powers by Green Level, Green Level has not substantially complied with N.C. Gen. Stat. § 160A-360." Green Level argues (1) that this argument was not properly preserved for appellate review; and (2) alternatively, that it has no merit.

Rule 10 of the Rules of Appellate Procedure mandates that a party

present[] to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion.

N.C.R. App. P. 10(b)(1). To be properly made the basis of a cross-assignment of error, an action or omission of the trial court must have been properly preserved for appellate review. N.C.R. App. P. 10(d).

At the close of Green Level's evidence, the County moved to dismiss under N.C. Gen. Stat. § 1A-1, Rule 41, stating "for all the arguments . . . in our trial brief[.]" The County proceeded to argue the various issues raised in Green Level's assignments of error discussed above, but did not present any argument as to whether Green Level had provided meaningful extension of land use powers under N.C. Gen. Stat. § 160A-360. The County did list this issue as part of its pretrial order, and this order is contained in the record, but we are unable to determine from the order whether the trial court was presented with any argument on this issue or whether the trial court made any ruling on this issue. No mention of this issue is made in the trial court's judgment. Therefore, we cannot address this issue and we overrule this cross-assignment of error.

### B. Timely adoption of official plans

[3] In its next cross-assignment of error, the County argues that Green Level's ETJ ordinance is invalid because Green Level failed to timely adopt official plans pursuant to N.C. Gen. Stat. § 160A-360(b). Green Level argues (1) that this argument is not properly preserved for our review; and (2) alternatively, that it lacks merit. For the same reasons stated above, we can find no ruling on this issue in the record. Therefore, this cross-assignment of error is overruled.

### C. Expert witness testimony

[4] In its third and final cross-assignment of error, the County argues that the trial court improperly admitted the testimony of Donald Lee Clark (Clark), an expert witness for Green Level. The County argues that Clark improperly testified regarding questions of law, specifically, whether the stream buffers in the 1997 ordinance constituted zoning in the proposed ETJ area.

Assuming *arguendo* that Clark's testimony was improper, our review of the trial court's judgment does not reveal that Clark's testimony was used to support its findings and conclusions. In fact, the trial court's findings and conclusions were contrary to Clark's testimony. "In a nonjury trial, it is presumed that if incompetent evidence was admitted, it was disregarded and did not influence the judge's findings." *Gunther v. Blue Cross/Blue Shield*, 58 N.C. App. 341, 344, 293 S.E.2d 597, 599 (1982), *disc. review denied*, 306 N.C. 556, 294

S.E.2d 370 (1982). We find nothing to overcome that presumption. Therefore, we overrule this cross-assignment of error.

Reversed.

Judges LEVINSON and JACKSON concurred.

Judge Levinson concurred in this opinion prior to 7 July 2007.