SOUTHERN SEEDING SERVICE, INC., PLAINTIFF v. W.C. ENGLISH, INC.; LIBERTY MUTUAL INSURANCE COMPANY; AND TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA, DEFENDANTS

No. COA11-381

(Filed 6 December 2011)

**1. Contracts—construction—equitable adjustment and delay damages clauses—distinct**

The trial court erred in a non-jury trial in a contract action arising from a road construction project by determining that one clause of the contract foreclosed relief under a different clause and that plaintiff was not entitled to an equitable adjustment. Equitable adjustment and delay damages clauses are often found in construction contracts and allocate distinct risks. The trial court's blending of the separate provisions failed to give effect to the contract as a whole and frustrated the intentions of the parties.

**2. Construction Claims—road construction contract—payment bond—seeding subcontract**

Breach of a seeding subcontract was within the terms of a payment bond on a road construction contract where the bond stated that it applied to "all persons supplying labor and materials in the prosecution of the project."

Appeal by Plaintiff from orders entered 13 July 2010 and 11 October 2010 and from judgment entered 8 September 2010 by Judge Shannon R. Joseph in Guilford County Superior Court. Heard in the Court of Appeals 27 September 2011.

*Conner Gwyn Schenck, PLLC, by Timothy R. Wyatt and A. Holt Gwyn, for Plaintiff-appellant.*

*Ragsdale Liggett, PLLC, by William W. Pollock and Carrie Barbee, for Defendant-appellees.*

HUNTER, JR., Robert N., Judge.

Southern Seeding Service, Inc. ("Plaintiff") appeals the trial court's dismissal of its breach of contract claim against W.C. English, Inc. ("English") and its claim for damages against Liberty Mutual Insurance Company ("Liberty Mutual") and Travelers Casualty & Surety Company of America ("Travelers Casualty") (collectively, "the Sureties"). Plaintiff also appeals the trial court's order denying its

motion to amend judgment and motion for a new trial. Plaintiff contends the trial court erred by (1) misconstruing "no damages for delay" and "equitable adjustment" clauses in the subcontract entered into between Plaintiff and English; and (2) concluding that Liberty Mutual and Travelers Casualty were not liable to Plaintiff as sureties on a statutorily required payment bond. After careful review, we reverse and remand.

## I.  Factual & Procedural Background

Plaintiff is a North Carolina corporation in the business of performing seeding, fertilizing, and mulching services. Plaintiff has conducted grassing work for various North Carolina Department of Transportation ("NCDOT") projects since 1958. On 15 July 2003, NCDOT opened bidding for a project located in Greensboro ("the Project"). NCDOT's project proposal described the Project as involving "widening, drainage, paving, [and] lighting" work in the Greensboro "Western Loop" area extending "from I-40 to North of Bryan Boulevard." NCDOT's proposal specified 1 July 2007 as the completion date for the Project.

NCDOT awarded the principal contract on the Project to APAC-Atlantic, Inc., Thompson—Arthur Division ("APAC"). As required by N.C. Gen. Stat. § 44A-26, APAC executed a Contract Payment Bond (the "payment bond") with NCDOT in the amount of $101,558,741.04, guaranteeing payment to all subcontractors and material suppliers on the Project. Liberty Mutual and Travelers Casualty signed as sureties on the payment bond.

APAC subcontracted the grading and grassing work for the Project to English. English, in turn, subcontracted a portion of the grassing work to Plaintiff. The subcontract, entered into between Plaintiff and English on 23 October 2003, included a $2,080 "unit price" for Plaintiff's seeding and mulching services, and listed other specific grassing tasks with accompanying unit prices. Term 1 of the subcontract, titled "Work," provides that Plaintiff must complete the work identified and described in Schedule A. Schedule A, Note 15 (hereinafter referred to as the "equitable adjustment clause" or "Note 15") provides the following:

> Unit prices herein quoted are based upon the assumption that the contract will be completed within time as specified in the specifications at time of bidding. Should our work be delayed beyond said time without fault on our part, unit prices herein quoted shall be equitably adjusted to compensate us for increased cost . . . .

A separate provision in the subcontract, Paragraph 7 (hereinafter referred to as the "no damages for delay clause" or "Paragraph 7") provides:

> Should [Plaintiff], without fault or neglect on its own part, be delayed in the commencement, prosecution, or completion of the Work by the fault or neglect of [English], [Plaintiff] shall be entitled to a reasonable extension of time, only. . . . In no event shall [Plaintiff] be entitled to compensation or damages for any delay in the commencement, prosecution, or completion of the Work except to the extent that [English] shall receive such compensation or damages from Owner or other third party.

Plaintiff commenced work on the Project on or about 26 September 2003. Throughout the Project, APAC expressed concern regarding English's inability to perform its grassing work in a timely manner. In a letter dated 13 July 2006, Plaintiff's president, Ralph Stout, Jr., complained to English that Plaintiff had been "put to extreme extra expense in [its] work due to the manner in which" English had managed the erosion control work. Mr. Stout further stated "[w]e did not bid this job to perform our work under emergency circumstances." When Plaintiff's work on the Project continued past the Project's scheduled completion date of 1 July 2007, Plaintiff informed English it was "keeping detailed records on all items, quantities, costs, etc. since July 1 [2007] in order to furnish the necessary information to make fair and equitable adjustments in [its] unit prices."

Due to what the NCDOT described as "thirteen supplemental agreements," the Project was not completed until 14 March 2008, 256 days beyond the Project's scheduled completion date. Plaintiff did not complete its work on the Project until 21 March 2008. In a letter dated 17 July 2008, Plaintiff notified APAC of its right to an equitable adjustment pursuant to Note 15 of the subcontract for increased costs incurred after 1 July 2007. On 18 November 2008, Plaintiff invoiced English for these costs in the amount of $194,941.39. Additionally, in a letter dated 8 December 2008, Plaintiff notified the Sureties that it would be seeking this payment pursuant to the payment bond if English failed to fully compensate Plaintiff for its work. English proposed to pay Plaintiff $2,300.00, which would cover Plaintiff's unit price increases incurred after 1 July 2007 but would not account for unit price increases incurred between the time Plaintiff commenced its work on the Project and 1 July 2007. Plaintiff rejected English's proposal.

SOUTHERN SEEDING SERV., v. W.C. ENGLISH, INC.

[217 N.C. App. 300 (2011)]

On 23 September 2009, Plaintiff filed a complaint in Guilford County Superior Court alleging two claims for relief. Plaintiff's first claim alleges that English breached its subcontract with Plaintiff by failing to pay Plaintiff $194,941.39 under the equitable adjustment clause for the increases in its unit cost of labor and materials furnished for the Project after 1 July 2007. Plaintiff's second claim for relief alleges that Liberty Mutual and Travelers Casualty are liable to Plaintiff for payment under the payment bond because of English's failure to fully compensate Plaintiff for its work on the Project.

On 2 September 2010, following a bench trial, Judge Joseph entered judgment denying Plaintiff's requested relief. The trial court, "[g]iving effect to Paragraph 7 in conjunction with Note 15" and "construing the Subcontract as a whole," concluded "an equitable adjustment in unit prices *would* be permitted to the extent English receives compensation of increased unit prices for delays in the work from any outside source, including NC DOT or APAC." (Emphasis in original). However, "English was not obligated to equitably adjust [Plaintiff's] unit prices for increased cost, if any, arising from working past 1 July 2007" because "English had no contractual remedy against APAC to receive adjustment in unit prices for delay beyond the original completion date." The trial court dismissed Plaintiff's claim against the Sureties as moot. Judge Joseph subsequently denied Plaintiff's motion for a new trial and motion to amend judgment in an order entered 11 October 2010. Plaintiff filed its notice of appeal as to the trial court's judgment and order on 3 November 2010.

## II. Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-27(b), as Plaintiff appeals from final judgments of the Superior Court as a matter of right.

## III. Analysis

### A. Plaintiff's Breach of Contract Claim Against English

[1] We first address Plaintiff's contention that the trial court erred in dismissing its breach of contract claim against English. When reviewing a judgment from a bench trial, "our standard of review 'is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment.'" *Town of Green Level v. Alamance County*, 184 N.C. App. 665, 668-69, 646 S.E.2d 851, 854 (2007) (citation omitted). The trial court's " '[f]indings of fact are binding on appeal if there is

competent evidence to support them, even if there is evidence to the contrary.' " *Id.* at 669, 646 S.E.2d at 854 (citation omitted). This Court reviews the trial court's conclusions of law *de novo. Id.*

On appeal, Plaintiff does not contest the trial court's findings of fact. Plaintiff challenges only the trial court's Conclusions of Law 30, 32, and 33, which are set forth in the trial court's judgment as follows:

> 30. The Court agrees with English that there is a potential con-
> flict in the clauses: equitably adjusting bid unit prices to "com-
> pensate" [Plaintiff] for "increased cost" for "delay []" after 1 July
> 2007, as provided for in Note 15 of the Subcontract, would amount
> to "compensation . . . for any delay . . . of the Work," as prohibited
> by Paragraph 7 of the Subcontract. (Second alteration in original)
> (ellipses in original).
>
> . . . .
>
> 32. With this principle in mind, the Court observes that
> Paragraph 7 does allow for additional compensation to Southern
> Seeding "to the extent that [English] shall receive such compen-
> sation . . . from [NCDOT] or any third party." Giving effect to
> Paragraph 7 in conjunction with Note 15, construing the Subcon-
> tract as a whole, the agreement contemplated that an equitable
> adjustment in unit prices would be permitted to the extent English
> receives compensation of increased unit prices for delays in the
> work from any outside source, including [NCDOT] or APAC.
>
> 33. As it turned out, however, English had no contractual rem-
> edy against APAC to receive adjustment in unit prices for delay
> beyond the original completion date. Nor did APAC have a con-
> tractual remedy to receive adjustment to its unit prices from
> [NCDOT]. Further, beyond what has already been paid to
> [Plaintiff] for quantity overruns and additional work, there was
> not evidence that English in fact had received compensation for
> work delayed past 1 July 2007. Thus, [Plaintiff] seeks increased
> compensation in unit prices that English has not received and
> does not appear to be entitled to receive. Accordingly, English
> was not obligated to equitably adjust [Plaintiff's] unit prices for
> increased cost, if any, arising from working past 1 July 2007, as
> [Plaintiff] seeks.

We begin by noting that this case is one of contract interpretation. As this Court explained in *Int'l Paper Co. v. Corporex Constructors, Inc.,*

[i]t is well settled that a contract is construed as a whole. The intention of the parties is gleaned from the entire instrument and not from detached portions. Individual clauses are to be considered in context. All parts of the contract will be given effect if possible. This Court has long acknowledged that an interpretation which gives a reasonable meaning to all provisions of a contract will be preferred to one which leaves a portion of the writing useless or superfluous.

96 N.C. App. 312, 316, 385 S.E.2d 553, 555-56 (1989).

Construction contracts often contain clauses with terms of art unique to the construction industry. A "no damages for delay" clause and an "equitable adjustment" clause are two examples of such terms of art. A " 'no damages for delay' clause [ ] often appear[s] in building or construction contracts, and [is] aimed to preclude claims on the part of the contractor or subcontractors for damages due to delay in commencing or completing the performance of such contracts." 67 Am. Jur. Proof of Facts 3d 339 (2002). This Court has defined "delay damages" to include a contractor's "extended 'general conditions' expenses, that is, the cost of keeping tools and equipment on the site for the extended period." *Bolton Corp. v. T.A. Loving Co.*, 94 N.C. App. 392, 404, 380 S.E.2d 796, 804 (1989). An equitable adjustment clause, on the other hand, allocates the risk of increased costs should unforeseen circumstances present "conditions which significantly differ from those indicated to exist in the contract." *S. J. Groves & Sons & Co. v. State*, 50 N.C. App. 1, 59, 273 S.E.2d 465, 495 (1980) (" 'Where parties labor under a mutual mistake as to vital facts, the contract, in the interests of fairness, should be flexible enough to permit an equitable adjustment.' " (citation omitted)). Moreover, our courts have consistently distinguished delay damages from damages incurred for increased costs arising out of the same delay circumstances. *See, e.g., APAC-Carolina, Inc. v. Greensboro-High Point Airport Auth.*, 110 N.C. App. 664, 675, 678, 431 S.E.2d 508, 514, 516 (1993) (denying APAC's delay damages claim and separately rejecting APAC's request for a unit price increase because the contract contained no price-escalation provision); *Davidson & Jones, Inc. v. N.C. Dep't of Admin.*, 315 N.C. 144, 150-51, 337 S.E.2d 463, 466-67 (1985) (specifically distinguishing between damages sought for increased work and the damages for duration-related expenses).

In the case *sub judice*, the trial court's interpretation of Paragraph 7 and Note 15 lies at the heart of the challenged conclu-

sions of law, and, ultimately, led the trial court to its determination that English is not liable to Plaintiff for breach of the subcontract. The trial court's Conclusion of Law 30 states there "is a potential conflict" between Paragraph 7 and Note 15. The language in Paragraph 7 forecloses the possibility of Plaintiff collecting damages "for any delay in the commencement, prosecution, or completion of the Work except to the extent that [English] shall receive such compensation or damages from Owner or other third party." Note 15, on the other hand, provides that Plaintiff's bid for the Project was "based upon the assumption that the contract will be completed" by 1 July 2007 and affords Plaintiff an equitable adjustment should its Project costs increase after that date. Paragraph 7 is clearly a "no damages for delay" clause; Note 15 is clearly an "equitable adjustment" clause. These clauses allocate two distinct risks, and our Courts have consistently treated these provisions separately. *See supra.*

In its Conclusion of Law 32, the trial court "constru[ed] the Subcontract as a whole" and determined that the language in Paragraph 7 limiting Plaintiff's delay damages "to the extent that [English] shall receive such compensation or damages from Owner or other third party" also limited Plaintiff's ability to seek an equitable price adjustment under Note 15. The trial court further reasoned (Conclusion of Law 33) that because English had no remedy against APAC or NCDOT, neither Paragraph 7 nor Note 15 afforded Plaintiff a remedy against English. The trial court's reasoning is flawed. As explained supra, Paragraph 7 and Note 15 allocate two distinct risks. The trial court's blending of these separate provisions fails to give effect to the contract as a whole and frustrates the intentions of the parties. *See Int'l Paper Co.*, 96 N.C. App. at 317, 385 S.E.2d at 556 ("When a court is asked to interpret a contract its primary purpose is to ascertain the intention of the parties."). While Plaintiff's relief under Paragraph 7 is limited to the extent English is compensated by APAC or NCDOT for Project delays, Note 15 does not set forth this limitation. Therefore, we cannot agree with the trial court's conclusion that Plaintiff was foreclosed from an equitable adjustment under Note 15 simply because it was foreclosed from delay damages under Paragraph 7. Such a reading fails to give effect to both contractual provisions and improperly shifts the risk of increased material costs to Plaintiff. Plaintiff seeks only an equitable adjustment under Note 15 to recover for market driven cost increases associated with material and labor costs incurred after 1 July 2007, the date originally intended for completion of the Project. The plain language of Note 15 affords Plaintiff

this relief, and the language of Paragraph 7 does not negate it. Accordingly, we hold that the trial court erred in determining that Paragraph 7 foreclosed Plaintiff's relief under Note 15 and further erred in concluding that Plaintiff is not entitled to an equitable adjustment. As we limit our holding to the specific conclusions of law challenged by Plaintiff on appeal (Conclusions of Law 30, 32, and 33), we reverse and remand to the trial court for further proceedings consistent with this opinion.

## B. Plaintiff's Claim Against the Sureties on the Payment Bond

[2] We next address Plaintiff's contention that Liberty Mutual and Travelers Casualty are liable to Plaintiff as sureties on a payment bond executed between APAC and NCDOT. The trial court dismissed Plaintiff's claim against the Sureties as moot after concluding English had not breached its contract with Plaintiff. In light of our holding in part III(A) *supra*, we address Plaintiff's contention.

As our Supreme Court stated in *Interstate Equip. Co. v. Smith:*

> It has long been established that a third party, for whose benefit a contract has been made, may maintain an action for breach of that contract. This principle also applies to the intended beneficiaries of a contractor's or subcontractor's bond, and such a beneficiary may maintain an action against the surety on the bond.

292 N.C. 592, 595, 234 S.E.2d 599, 601 (1977) (citations omitted). N.C. Gen. Stat. § 44A-26(a) provides that a "contracting body" for any construction project exceeding $300,000 must require any "contractor or construction manager at risk" to obtain a payment bond. N.C. Gen. Stat. § 44A-26(a) (2009). As this Court has explained, "[c]ontractor payment bonds were designed for the protection of laborers and materialmen and are to be construed liberally for their benefit." *Symons Corp. v. Ins. Co. of N. Am.*, 94 N.C. App. 541, 544, 380 S.E.2d 550, 552 (1989) (citing N.C. Gen. Stat. § 44A-27 (2009)); *RGK, Inc. v. United States Fidelity & Guaranty Co.*, 292 N.C. 668, 235 S.E.2d 234 (1977); *Owsley v. Henderson*, 228 N.C. 224, 45 S.E.2d 263 (1947)). Moreover, "The payment bond shall be solely for the protection of the persons furnishing materials or performing labor for which a contractor, subcontractor, or construction manager at risk is liable." N.C. Gen. Stat. § 44A-26(a)(2) (2009).

In *Symons*, a subcontractor on a hotel construction project contracted with a supplier to provide equipment for the project. *Symons*,

94 N.C. App. at 541-42, 380 S.E.2d at 551. The subcontractor failed to pay the supplier for the costs of the equipment. *Id.* This Court held that the surety on a bond executed by the project's general contractor was liable to the supplier for these equipment costs. *Id.* at 546, 380 S.E.2d at 553; *see also Beachcrete, Inc. v. Water St. Ctr. Assocs., L.L.C.,* 172 N.C. App. 156, 159, 615 S.E.2d 719, 721 (2005) (permitting subcontractor to recover under payment bond, despite not being a party to the payment bond, where the bond "expressly state[d] that it was for 'the benefit of any subcontractor, materialman or laborer.' "); *Boatwright Distribution & Supply, Inc. v. N. State Mech., Inc.,* No. COA09-1077, 2010 WL 3464837 (N.C. Ct. App. Sept. 7, 2010) (unpublished) (holding that surety was liable to subcontractor on payment bond because payment bond applied to "any claimant who, among other things, supplied materials that were 'reasonably required for use in the performance of the Subcontract.' ").

In the instant case, NCDOT required APAC to obtain a payment bond in accordance with N.C. Gen. Stat. § 44A-26. This Court cannot agree with the trial court's conclusion that the payment bond applied "only to payment for labor and materials of the work provided in the contract between APAC and [NCDOT]" and that a "breach of the Subcontract is outside the terms of the bond." Like the plaintiffs in *Symons, Beachcrete,* and *Boatwright,* Plaintiff is a subcontractor seeking recovery based upon a payment bond executed by the general contractor on a construction project (here, APAC). The payment bond states that it applies to "all persons supplying labor and materials in the prosecution of the [Project][.]" The clear intent of the North Carolina Legislature, *see* N.C. Gen. Stat. § 44A-26(a)(2) *supra,* in addition to the case law cited *supra* render this language sufficient to hold Liberty Mutual and Travelers Casualty liable to Plaintiff as sureties on the payment bond.

Because we reverse the trial court's judgment as to Plaintiff's underlying claims for relief, we need not address the trial court's denial of Plaintiff's Motion for a New Trial and Motion to Amend Judgment.

## IV. Conclusion

For the foregoing reasons, we reverse the trial court's judgment in favor of Defendants and remand this matter to the trial for further proceedings consistent with this opinion.

Reversed and Remanded.

Judges MCGEE and ELMORE concur.