FINCH BROTHERS v. J. L. MICHAEL.

(Filed 18 November, 1914.)

**Contracts—Sale of Business—Good-will—Agreements Not to Enter Business —Breach of Agreement—Trials—Evidence—Nonsuit.**

In an action upon an alleged breach of contract for the sale of a mercantile business, good-will, etc., with provision that the vendor would not again engage in that character of business in the same town for a year and a half, the plaintiff's evidence tended only to show that his vendor had loaned money to another and newly formed partnership between third persons in the same town, engaged in the same character of business; that the telephone number he had used while in business had been given to this new concern, etc., and that in a few specific instances customers who had traded with him occasionally had, at times, traded with the new partnership. *Held,* the defendant had a perfect right to lend his money to the new concern, and that this, and the further instances mentioned, were not evidence sufficient to be submitted to the jury upon the question of his violating his contract by engaging in a business of a similar character to that sold by him to the plaintiff.

Appeal by plaintiffs from *Lane, J.,* at February Term, 1914, of Davidson.

*Phillips & Bower and E. E. Raper for plaintiff.*
*Walser & Walser and McCrary & McCrary for defendant.*

Walker, J. This action was brought to recover damages for an alleged breach of a contract, by which defendant sold to the plaintiffs his retail grocery business in Lexington, with the fixtures and good-will belonging thereto, at cost for the goods, wares, and merchandise, and $1,000 for the fixtures and good-will, plaintiffs paying $200 as a bonus,

and defendant agreeing not to conduct the same kind of business in said town for one and a half years thereafter. The breach alleged was that defendant loaned money to Michael & Parker, a new grocery firm, and that the telephone number which had been used by the defendant in the old store had been changed and the old number transferred to the phone of the new firm. There were some other minor complaints made against defendant, but we think they are not sufficient to show any breach of the contract. Even if defendant committed the small offenses imputed to him, and they were calculated to cause injury to plaintiff, the damages claimed are entirely too speculative and conjectural to form the basis of a recovery, and, besides, the causal connection between the imputed wrongs, if the latter are of sufficient consequence to be noticed by the law (*de minimis non curat lex*), and the alleged injury is not shown with any semblance of accuracy. We cannot jump to a conclusion, but the proof must be of such a character as to show with at least some degree of certainty that the alleged wrongs produced an injury, or resulted in a violation of plaintiff's rights. Both wrong and damage must be shown, and it must appear that the latter was the effect and the former the cause. *Byrd v. Express Co.,* 139 N. C., 273; *Machine Co. v. Tobacco Co.,* 141 N. C., 284. The defendant had no interest in the partnership of Michael & Parker, and he had a perfect right to lend them money. The principle is well stated by *Justice Burwell* in *Reeves v. Sprague,* 114 N. C., 647. It appeared there that Sprague sold part of his stock in trade and the good-will of his business to Reeves, with a stipulation that he would not engage in the same business in Waynesville, N. C., and afterwards Sprague sold the balance of the stock to one J. R. Davis, who started and conducted the same kind of business in said town in competition with Reeves. At the time he bought the remnant of the stock Davis gave Sprague his note for the price, secured by a mortgage, and thereafter took possession and prosecuted the business of druggist. With reference to these facts, the Court said: "It cannot be seriously contended that Sprague is violating a contract not to engage in the business of a druggist in Waynesville merely because he has a lien on a stock of drugs at that place. We find in the evidence adduced no substantial foundation for the plaintiffs' allegation that the mortgage made by Davis to Sprague is a sham, and that Davis is merely the agent of Sprague. If, in fact, he is such agent, the injunction against the defendant Sprague and his agent is sufficient for the plaintiffs' purposes. They produce no proof whatever, as it seems to us, that the appellant is Sprague's agent—only facts that might raise a suspicion that he is. To stop his lawful business upon the evidence now before us seems unreasonable." The same was also held to be the law in *Kramer v. Old,* 119 N. C., 1, but the evidence tended to show that the seller afterwards

attempted to enter into competition with his buyer by becoming a member of a corporation which carried on the same business within the territory prohibited to him by the agreement, and it was properly held that this was a breach of the contract; but the Court thus referred to our point: "While the courts will not restrain a party bound by such a contract from selling or leasing his premises to others to engage in the business which he has agreed to abstain from carrying on, or from selling to them the machinery or supplies needed in embarking in it (*Reeves v. Sprague,* 114 N. C., 647), a different rule must prevail when it appears that the prohibited party attempts, not to sell outright to others, but to furnish the machinery or capital, or a portion of either, in lieu of stock, in a corporation organized with a view to competition with the person protected by his contract against such injury. The three contracting defendants have presumably received the full value of the business sold, and which is protected by their own agreement against their own competition, and equity will not allow them, with the price in their pockets, to evade their contract under the thin guise of becoming the chief stockholders in a company organized to do what they cannot lawfully do as individuals." But in this case the defendant has no pecuniary interest in the firm of Michael & Parker, either directly or indirectly, as member, manager, agent, or otherwise, for he is only a creditor of the partnership, which is a very different thing from conducting the business or being interested therein. In a sense, he may be considered as having some concern for its success as its creditor, but this is all, and is not sufficient to constitute a breach of his contract, either under the sale of the good-will or the restrictive covenant.

We said in *Faust v. Rohr,* 166 N. C., 187, referring specially to *Scudder v. Kelford,* 57 N. J. Eq., 171: "The negative covenant entered into by the petitioner, by which he bound himself not to engage in the same business within the borough, was of much more consequence than a mere sale of the good-will of the business to Mr. Scudder. The sale of the good-will would have only precluded the vendor from soliciting trade from the old customers of the firm, but would not have prevented him from setting up a rival business in Princeton or anywhere else," and citing further the following cases: *Labuchere v. Dawson,* L. R. 13 Eq., 322; *Newark Coal Co. v. Spangler,* 8 Dick. Ch. Rep., 354; *Althen v. Vreeland,* 36 Atl. Rep., 479. It has been stated, as a general rule, that good-will exists in a professional as well as in a commercial business, subject to the distinction that it is not so much fixed or as localized as the good-will of a trade, but attaches to the person of a professional man or woman, as a result of confidence in his or her skill and ability. "Consequently, in enforcing the agreement where there has been nothing more than a mere sale of 'good-will,' the courts, at most, have only held that

the vendor of the good-will is precluded by his contract from soliciting the former customers of the old partnership to deal with himself or not to deal with his vendee." 14 A. and E. Enc. of Law, 1091.

The difficulty which plaintiff encounters in this case is that he offers no tangible proof of a breach of the contract. There is, perhaps, something from which we may suppose or conjecture that there was a slight interference with the quiet and reasonable enjoyment by plaintiff of the good-will which he had purchased; but this will not do, and the evidence must be more definite. We thus expressed ourselves in *Crenshaw v. Street Railway,* 144 N. C., at p. 320: "The kind of proof which must be forthcoming in order to establish the issues in favor of the plaintiff was considered recently by us in *Byrd v. Express Co.,* 139 N. C., 273, where we said: 'There must be legal evidence of the fact in issue, and not merely such as raises a suspicion or conjecture in regard to it. The plaintiff must do more than show the possible liability of the defendant for the injury. He must go further, and offer at least some evidence which reasonably tends to prove every fact essential to his success.'" And in *Campbell v. Everhart,* 139 N. C., at p. 516: "The sufficiency of evidence in law to go to the jury does not depend upon the doctrine of chances. However confidently one, in his own affairs, may base his judgment on mere probability as to a past event, when he assumes the burden of establishing such event as a proposition of fact and as a basis for the judgment of a court, he must adduce evidence other than a majority of chances that the fact to be proved does exist. It must be more than sufficient for a mere guess, and must be such as tends to actual proof. But the province of the jury should not be invaded in any case, and when reasonable minds, acting within the limitations prescribed by the rules of law, might reach different conclusions, the evidence must be submitted to the jury," citing *Lewis v. Steamship Co.,* 132 N. C., 904; *Byrd v. Express Co., supra; Wheeler v. Schrœder,* 4 R. I., 383; *Offutt v. Col. Exposition,* 175 Ill., 472; *Day v. R. R.,* 96 Me., 207; *Catlett v. R. R.,* 57 Ark., 461; *R. R. v. Stebbing,* 62 Md., 504.

The defendant may not have acted with due propriety, nor with perfect good faith, but we cannot see that he has committed any legal wrong. The telephone was entirely under the control of the telephone company, and Michael & Parker had the right to it if the company consented that they might use it, or did not object thereto, after notice of their doing so. It promised to restore it to the plaintiff, but, it seems, did not do so, for some reason, we suppose, satisfactory to itself.

It may be added that defendant was not required by his contract to see that plaintiff retained all the customers of the old business. He could not do this, as they were at liberty to trade where they pleased; nor does it sufficiently appear how many, if any of them, were lost by plaintiff,

whether by any action of defendant or not. We are, therefore, left suspended in the realm of conjecture, without any appreciable thing, either definite or certain, being proved, and the damages more uncertain than anything else, if there was any wrong.

The case, in its final analysis, seems to have been reduced to the very attenuated matter of a few eggs and a small quantity of butter sold by W. N. Shoaf, a former customer of defendant, to Michael & Parker; but Shoaf testified: "I had several places to trade and went everywhere, for that purpose, that I pleased," or words to that effect. Taking all the evidence together, it does not measure up to the standard fixed by the law.

The court nonsuited plaintiff at the close of his evidence, and we see no error in its doing so.

Affirmed.