MOLLIE SUE MARTIN ET AL. v. OLIVE BELLE VINSON ET AL.

(Filed 26 September, 1917.)

1. **Wills—Devises—Locus in Quo—Identity.**

> The testator devised to his son C. a known and designated 100-acre tract of land. C. died intestate, leaving him surviving two daughters and a son, R. The appellants claim an interest in the *locus in quo* through their mother, a daughter of C. and a sister of R. The lands in controversy were devised by R. to the children of F. and as "the tract of land on which their mother lived at the time of her death and came by my father": *Held,* the devise of R. being of the tract of land, and not of his interest therein, is not sufficient evidence in itself to identify the land as that devised to his father C. and in which the appellants claim an interest as the heirs at law of their mother, the sister of R.

2. **Descents—Heirs at Law—Evidence—Identification.**

> Where the appellants claim the *locus in quo* through their mother, M., as an heir at law of her father, C., testimony of the daughters of M. that she had told them that her father was C., and that her brother R. and her sisters were the children of C. is held sufficient under the circumstances of this case to establish their relationship.

3. **Appeal and Error—Exceptions—Briefs.**

> Exceptions not discussed in the brief on appeal are deemed abandoned.

CIVIL ACTION tried before *O. H. Allen, J.,* at Spring Term, 1917, of HERTFORD.

This was a proceeding, brought under section 1590 of the Revisal, to sell certain lands in Hertford County devised under item 6 of the codicil thereto of the will of R. D. Bridger.

The appellants claim that under the will of Josiah Bridger the first tract of land devised in item 6 of the will of R. D. Bridger was devised by said Josiah Bridger to his son, Carter Bridger; that Carter Bridger died intestate and left three children: R. D. Bridger, Martha Rebecca (Moore), and Charlotte Ann (Matthews); that Martha Rebecca Moore (*née* Bridger) was the mother of appellants; that she died 16 May, 1893, in the State of Illinois, having removed from North Carolina

when a child about 13 years of age. The depositions of Mrs. Gaddis and Mrs. Phelps, both daughters of Mrs. Moore, were taken and offered in evidence. Both of these witnesses testify that their mother was Martha Rebecca Moore; that she told them her father was Carter Bridger; that she was born in Hertford County, and that R. D. Bridger was her brother, and she had a sister, Charlotte Ann, who married .............. Matthews.

His Honor sustained the objection of plaintiffs to certain questions and answers in the deposition, and charged the jury to answer the issue submitted "No." That issue was as follows: "Have the heirs of Rebecca Moore any interest in the land described in the complaint in this cause?"

The defendants excepted to the rulings of his Honor on the question of evidence, and also to his instruction to the jury.

Josiah Bridger, who was the father of Carter Bridger and the grandfather of R. D. Bridger, died about 1831, leaving a will in which he devised a tract of land as follows:

Item 5. "I give and bequeath to my son Carter one feather bed and furniture and one hundred acres of land, more or less, known by the name of the Old Place, adjoining John Jones and Colonel Wynns."

Item 10. "If my son Carter in like manner should die without heir lawfully begotten of his body, I wish the land before given to my said son Carter to descend to my two sons, William and James, share and share alike."

Carter Bridger died about 1838, leaving R. D. Bridger as one of his heirs at law, the appellants also claiming to be heirs at law of Carter Bridger and Josiah Bridger.

R. D. Bridger died about 1905, leaving a will in which he devised the land in controversy to the children of Sarah Jane Futrell, the land being described in said devise as "the tract of land on which their mother lived at her death and came by my father."

The appellants offered no evidence identifying the land described in the sixth item of the will of R. D. Bridger as the same land described in the fifth item of the will of Josiah Bridger, other than that contained in the devises themselves.

There was a verdict and judgment in favor of the plaintiff, and the petitioners claiming to be heirs of Martha Rebecca Moore excepted and appealed.

*Winborne & Winborne for plaintiffs.*
*R. C. Bridger and Manning & Kitchin for defendants.*

ALLEN, J. The exceptions to the exclusion of certain parts of the depositions offered by the appellants are not discussed in the brief, and

are therefore deemed abandoned. This leaves two questions for decision under the peremptory instruction of his Honor:

(1) Did the appellants offer evidence tending to prove that they are the heirs at law of Josiah Bridger and of Carter Bridger?

(2) Is there evidence that the land described in the devise in the will of R. D. Bridger is the same land that was devised by Josiah Bridger to his son Carter?

If there was evidence of these two facts, then there was error in the instruction of his Honor directing the jury to answer the issue "No"; and if there is a failure of proof as to both, the appellants have shown no interest in the land in controversy.

Upon the first question, the depositions offered in evidence by the appellants furnished evidence of the relationship, and if accepted by the jury, would justify a finding that the appellants are heirs. We do not think, however, that there is any evidence identifying the land in the will of R. D. Bridger as the same land devised by Josiah Bridger to his son Carter, father of R. D. Bridger.

The appellants rely upon the expression in the will of R. D. Bridger, "and came by my father." If the expression had been "came by my father by inheritance," or "came by my father, being the land devised to him by Josiah Bridger," there might have been evidence of identification; but the fact that he received the land from his father in the absence of other proof, and taken in connection with the fact that R. D. Bridger does not undertake to devise his interest in the land, but the land itself, furnishes no evidence upon the disputed question. In other words, if the appellants are heirs, and it is the same land and Carter Bridger died intestate without having executed a conveyance for the land, then they would be entitled to one-third of the land, and R. D. Bridger would have been the owner of a one-third interest. On the other hand, if the land is the same, and Carter Bridger executed a conveyance to R. D. Bridger, he would have been entitled to the whole; and when R. D. Bridger devises the land and not his interest therein, it is equivalent to a declaration on his part that he owns the entire land, and not an interest therein; and when he describes it "as the land that came by my father," it means, in the absence of explanation, that he was entitled to the whole of the land from his father.

Again, the land devised in the sixth item of the will of R. D. Bridger may have passed to the testator from his father, Carter Bridger, without being the same land devised by Josiah Bridger to Carter. It may have been acquired by Carter by purchase or by inheritance from some other person, and not under the devise of Josiah. We are more inclined to adopt this conclusion, rather than permit land titles to rest upon mere

speculation, as the records were open to appellants and they could have easily shown how R. D. Bridger acquired title.

As said in *Byrd v. Express Co.*, 139 N. C., 273, and approved in *Finch v. Michael*, 167 N. C., 325, "There must be legal evidence of the fact in issue, and not merely such as raises a suspicion or conjecture in regard to it. The plaintiff must do more than show the possible liability of the defendant for the injury."

We therefore conclude there was no error in the instruction given to the jury.

No error.