PHELPS STAFFING, LLC v. S.C. PHELPS, INC.

[217 N.C. App. 403 (2011)]

PHELPS STAFFING, LLC, Plaintiff v. S.C. PHELPS, INC.; SHEILA PHELPS; CHARLES
T. PHELPS; MOYSES ROA MATA; and C T PHELPS, INC., Defendants, S.C.
PHELPS, INC., Third Party Plaintiff v. OMAR EL-KAISSI, Third Party Defendant

No. COA11-472

(Filed 20 December 2011)

### 1. Appeal and Error—notice of appeal—designation of court— intent of appeal fairly inferred from notice

Defendant's motion to dismiss plaintiff's appeal in a breach of a non-compete clause case was denied. Plaintiff's failure to designate the Court of Appeals in its notice of appeal was not fatal to the appeal where plaintiff's intent to appeal could be fairly inferred, and defendants were not misled by plaintiff's mistake.

### 2. Appeal and Error—preservation of issues—failure to argue

Plaintiff's additional claims that it failed to present in its brief were deemed abandoned under N.C. R. App. P. 28(a).

### 3. Trials—findings of fact—reclassified as conclusion of law— application of legal principles

The trial court's finding of fact that neither Ms. nor Mr. Phelps, individually or together, entered into competition with plaintiff in any form, direct or indirect, at any time up to and including the present, was reclassified as a conclusion of law since it involved application of legal principles.

### 4. Employer and Employee—breach of non-compete clause— no legal nexus—assumed risk

The trial court did not err by determining that neither Ms. Phelps nor Mr. Phelps breached their obligations under the non-compete clause of the parties' agreement. There was no legal nexus between CTP's profits and the benefits CTP had conferred upon Ms. Phelps. Further, third-party defendant assumed the risk that Mr. Phelps might enter into competition with plaintiff since he made a business decision and proceeded with consummation of the agreement even though Mr. Phelps gave no assurance that he would not enter into competition with plaintiff.

Appeal by Plaintiff from order entered 13 May 2010 and memorandum of decision and judgment entered 18 August 2010 by Judge Howard E. Manning, Jr. in Franklin County Superior Court. Heard in the Court of Appeals 27 October 2011.

*Harris & Hilton, P.A., by Nelson G. Harris, for Plaintiff-appellant.*

*Edmundson & Burnette, L.L.P., by J. Thomas Burnette and James T. Duckworth, III, The Law Office of Thomas H. Clifton, PLLC, by Thomas H. Clifton, Davis, Sturges & Tomlinson, by Conrad Boyd Sturges, III, and J.P. Williamson, Jr., for Defendant-appellees.*

HUNTER, JR., Robert N., Judge.

This controversy centers upon the sale of a contract labor staffing business and the alleged breach of a non-compete clause in the asset sale agreement. The purchaser of the business, Phelps Staffing, LLC ("Plaintiff"), appeals the trial court's order and memorandum of decision and judgment denying Plaintiff's claims for relief against six named defendants, including, *inter alia*, the seller of the business, Sheila Phelps, and her husband, Charles Phelps. Plaintiff contends the trial court erred by concluding (1) Ms. Phelps did not breach her obligations under the non-compete clause of the asset sale agreement; and (2) Mr. Phelps was not bound by the asset sale agreement and, therefore, did not breach the non-compete clause by entering into competition with Plaintiff. After careful review, we affirm.

## I. Factual Background & Procedural History

The facts of this case are not in dispute. Ms. Phelps incorporated S.C. Phelps, Inc. ("SCP") in 1996. She has served as the president and sole shareholder of SCP since its incorporation. SCP engaged in the business of providing contract labor to local businesses. Ms. Phelps handled SCP's payroll, bookkeeping, and workers' compensation matters. Phelps used his prior experience and contacts in the labor staffing industry to recruit customers and contract laborers for SCP.[1] While Mr. Phelps did not draw a salary for his work through 2006 due to apparent tax issues,[2] he was, however, provided with approximately $250,000 in cash out of the proceeds of the business. In addition, SCP paid various personal expenses on behalf of Mr. and Ms. Phelps including mortgage payments on their primary residence, rental payments on their beach cottage, utility bill payments at both residences, and personal vehicle expenses such as automotive insurance.

---

1. The record before this Court indicates Mr. Phelps operated a contract labor business as a sole proprietor for at least two years prior to the incorporation of SCP.

2. The trial court determined that SCP was incorporated in Ms. Phelps' name because Mr. Phelps owed taxes to the Internal Revenue Service and the North Carolina Department of Revenue.

**PHELPS STAFFING, LLC v. S.C. PHELPS, INC.**

[217 N.C. App. 403 (2011)]

SCP thrived as Mr. Phelps continued to acquire new customers. These customers included Arcola Lumber Company, Cal-Maine Foods, Carolina Egg Companies, Coastal Supply, Inc., and Flippo Lumber Company. Moyses Roa Mata, another employee of SCP, assisted Mr. Phelps in recruiting the contract labor workers.

Ms. Phelps first attempted to sell SCP in 2000. The sale fell through, however, because Mr. Phelps refused to sign a non-competition agreement. In 2001, SCP leased a new office space on Bickett Boulevard. Ms. Phelps hired Crystal Powell to assist with SCP's payroll, taxes, and workers' compensation matters. Ms. Powell's role and responsibilities increased as Ms. Phelps' involvement with the business diminished.

Mr. Phelps' role with SCP also increased and, by 2006, he was the primary manager of the business and began drawing a weekly salary of $1,000. In March 2007, Mr. Phelps formed a new company, C. T. Phelps, Inc. ("CTP"). Ms. Phelps held no ownership interest in CTP, nor was she otherwise affiliated with CTP as Mr. Phelps' partner, agent, or employee. Around this time, Ms. Phelps told Mr. Phelps she was ready to get out of the contract labor business and wanted to sell SCP. Mr. Phelps agreed it was a good time to sell, and SCP was listed for sale later that year.

Omar El-Kaissi expressed an interest in acquiring SCP. Through discussions with Mr. and Ms. Phelps, Mr. El-Kaissi learned that Ms. Phelps was the sole owner of SCP and that SCP had been paying some of the Phelps' personal expenses. Mr. El-Kaissi informed Mr. and Ms. Phelps that he wanted both of them to sign a non-compete agreement as part of his asset purchase of SCP. Ms. Phelps agreed to sign on behalf of herself and SCP, but Mr. Phelps stated he would not sign a non-compete agreement.

Nevertheless, the transaction proceeded. On 10 December 2007, Ms. Phelps, acting on her own behalf and on behalf of SCP, and Mr. El-Kaissi, acting on behalf of Plaintiff, entered into an "Asset Purchase Agreement" (the "Agreement"). Pursuant to the Agreement, Plaintiff agreed to purchase all of SCP's assets including, *inter alia*, the business's good will, inventory, equipment, files, customer lists, and client information. Plaintiff agreed to pay a purchase price of $1.4 million, plus an additional $100,000 to be paid over a ten-year period pursuant to the terms of a promissory note. Mr. Phelps negotiated the sale on SCP's behalf and persuaded Mr. El-Kaissi to personally guarantee payment of the $100,000 note within twelve months of the Agreement.

The Agreement specifies $25,000 of the purchase price as consideration for the inclusion of a non-compete clause. Pursuant to this clause, SCP and Ms. Phelps agreed and covenanted "not [to] directly and/or indirectly Compete with Buyer . . . either by himself [sic] or through any entity owned or managed, in whole or in part, by the Seller for a period of [5 years][3] from the date of this Agreement within the Prohibited Territory."[4] The clause further provides, for the same five-year period, "Seller, Shelia [sic] Phelps and Charles Phillips[5] shall not jeopardize the present and future operations of the Business by requesting any present or future client, customer, or vendor of Buyer to curtail, amend, or cancel its business with Buyer." Moreover, the Agreement defines "Confidential Information" broadly and states:

> Seller, Shelia [sic] Phelps and Charles Phillips agree to hold in confidence and shall not, except pursuant to written authorization from the Buyer or as required by a governmental entity: (i) directly or indirectly reveal, report, publish, disclose or transfer the Confidential Information or any part thereof to any person or entity; (ii) use any Confidential Information or any part thereof for any purpose other than the benefit of the Buyer; or (iii) assist any person or entity other than the Buyer to secure any benefit from the Confidential Information or any part thereof for a period of two (2) years after the date of Closing . . . .

Mr. Phelps was present at the execution of the Agreement but he did not sign the Agreement. Mr. Phelps did not sign a non-compete agreement relating to the asset sale of SCP, nor did he give any written or oral assurance that he would not compete with Plaintiff's business. Plaintiff initially retained Ms. Powell and Mr. Mata as employees; however, both refused to sign a non-compete agreement. Ms. Powell left Plaintiff to assist Ms. Phelps with accounting work at SCP in February 2008. Plaintiff terminated Mr. Mata's employment in October 2008 after Mr. El-Kaissi discovered Mr. Mata had been diverting Plaintiff's customers to a competing business.[6]

3. The non-competition provision initially prescribed a three-year effective period. Upon further negotiation, the parties extended this period to five years..

4. The "Prohibited Territory" includes Hanover, Brunswick, Sussex, Caroline, Spotsylvania, and Amelia Counties in Virginia; Franklin, Warren, Vance, and Nash Counties in North Carolina; McDuffie County in Georgia; and Darke County in Ohio.

5. As the trial court noted, it is unclear why the name "Charles Phillips" appears in the Agreement. Charles Phillips is Ms. Phelps' son. He never met Mr. El-Kaissi and took no part in the execution of the Agreement.

6. It is unclear from the trial court's factual findings whether this "competing entity" was CTP.

**PHELPS STAFFING, LLC v. S.C. PHELPS, INC.**

[217 N.C. App. 403 (2011)]

Ms. Phelps split the proceeds from the asset sale of SCP with Mr. Phelps, transferring $759,263.41 into Mr. Phelps' account in June 2008. Mr. and Ms. Phelps separated approximately one month later. After their separation, Ms. Powell continued to do accounting work for Mr. Phelps and Ms. Phelps separately and continued to pay the Phelps' personal expenses out of SCP's business account. These expenses included mortgage payments on the Phelps' primary residence, rental payments on a beach cottage at Emerald Isle, utility payments for their primary residence and the beach cottage, personal vehicles, and automobile insurance. In August 2008, Mr. Phelps transferred $50,000 to SCP, which Ms. Powell applied towards payment of these expenses. In addition, Ms. Powell performed accounting work for Mr. Phelps' business, CTP. She was not being paid for this work but was drawing unemployment benefits from SCP. CTP began operating its business at the Bickett Boulevard office location in August 2008. SCP, however, paid the rent on that office space through January 2009.

Mr. Phelps maintained contact with SCP's former customers throughout 2008. In October of that year, Mr. Phelps informed Ms. Powell of his intent to return to the contract labor staffing business. He asked her to acquire new computer software to assist the accounting work for CTP. Ms. Powell obliged and installed new accounting software on a computer purchased by Mr. Phelps for CTP. Without Ms. Phelps' permission or participation, all of SCP's old business, financial, and accounting data sets were installed into the accounting software on CTP's new computer.

In December 2008, Mr. Phelps began competing with Plaintiff. Mr. Phelps contacted SCP's former customers, Arcola Lumber Company, Cal-Maine Foods, Carolina Egg Companies, Coastal Supply, Inc., and Flippo Lumber Company. At the time, these companies were engaged in business with Plaintiff. Mr. Phelps persuaded some of these companies to conduct business with CTP, and, in addition, "flipped" many of the contract laborers who were then working for Plaintiff. Mr. Mata assisted Mr. Phelps in recruiting and transferring the laborers from Plaintiff to CTP. Plaintiff contends that because many of these workers did not fill out job applications with CTP,[7] Mr. Phelps must have obtained their personal information, such as social security numbers, from SCP's old records.

---

7. The record indicates many of these laborers were in fact unaware they had been "flipped" prior to receiving their first paycheck from CTP in January 2009.

In February 2009, CTP began paying the rent for its office space and the various personal expenses (rent and utilities for the beach house, mortgage and insurance payments) that had formerly been paid by SCP. CTP also took over operation and payments on a fax machine and copier formerly used by SCP.

On 13 April 2009, Plaintiff filed a complaint in Franklin County Superior Court naming Ms. Phelps, SCP, Mr. Phelps, CTP, Mr. Mata, and Ms. Powell as Defendants. In its complaint, Plaintiff asserted claims against Ms. Phelps and SCP for breach of the confidentiality and non-competition clauses set forth in the Agreement (first and second claims for relief); against Ms. Phelps and SCP for breach of contract relating to payments of workers' compensation premiums made by Plaintiff, post-closing, which Plaintiff contended should have been paid by Ms. Phelps and SCP (third claim for relief); against all Defendants for violations of the Trade Secrets Protection Act (fourth and fifth claims for relief); against all Defendants for civil conspiracy (sixth claim for relief); against all Defendants for tortious interference with contractual relations (seventh claim for relief); and against all Defendants for unfair and deceptive trade practices (eighth claim for relief). Ms. Phelps and SCP counterclaimed against Plaintiff and impleaded third party Defendant Mr. El-Kaissi, alleging breach of contract for failure to pay the $100,000 promissory note in its entirety within one year of the Agreement.

On 19 January 2010, Ms. Phelps and SCP filed a motion for summary judgment. Ms. Powell and Mr. Mata filed motions for summary judgment on 30 April 2010. Neither Mr. Phelps nor CTP moved for summary judgment with respect to Plaintiff's claims. On 13 May 2010, the trial court entered an order: (1) granting Ms. Powell's motion for summary judgment as to all claims; (2) granting summary judgment in favor of Ms. Phelps, SCP, and Mr. Mata with respect to the Trade Secrets Act claim and the tortious interference with contractual relations claim; and (3) granting summary judgment in favor of Mr. Mata with respect to the unfair and deceptive trade practices claim.

On 7 June 2010, the trial court heard the claims not resolved by its 13 May 2010 order. The court permitted Plaintiff to amend its complaint to claim: (1) Mr. and Ms. Phelps operated SCP as a partnership and, accordingly, Mr. Phelps was bound by the non-competition clause set forth in the Agreement; (2) Mr. Phelps acted as the agent of SCP in competing with Plaintiff; (3) Mr. Phelps was the alter ego of SCP; and (4) as the true owner and alter ego of SCP, Mr. Phelps is bound by the terms of the non-competition clause.

PHELPS STAFFING, LLC v. S.C. PHELPS, INC.

[217 N.C. App. 403 (2011)]

On 18 August 2010, the trial court entered a memorandum of decision and judgment awarding Plaintiff $8,478.00 relating to the unpaid workers' compensation premiums (Plaintiff's third claim for relief) and denying relief with respect to Plaintiff's remaining claims. The trial court also concluded that Ms. Phelps and SCP were equitably estopped from accelerating the obligation of Mr. El-Kaissi and Plaintiff due under the promissory note.

## II. Jurisdiction & Scope of Review

On 17 September 2010, Plaintiff filed a timely notice of appeal with this Court. Plaintiff's notice of appeal provides as follows:

PLEASE TAKE NOTICE THAT Plaintiff Phelps Staffing, LLC, by and through the undersigned counsel, hereby appeals the Memorandum of Decision And Judgment filed August 18, 2010, and any and all interlocutory decisions of Court previously made and reflected in that Memorandum of Decision And Judgment.

On 21 December 2010, Defendants filed a motion with the trial court alleging jurisdictional default and seeking to dismiss Plaintiff's appeal to this Court. Defendants contended in their motion that Plaintiff's notice of appeal failed to comport with the requirements of Rule 3(d) of the North Carolina Rules of Appellate Procedure because it did not designate this Court as the court to which Plaintiff directed its appeal. Defendants further contended Plaintiff had failed to prepare and deliver the trial transcript in a timely manner as required by Rule 7(b)(1) of the North Carolina Rules of Appellate Procedure. The trial court denied Defendants' motion to dismiss in an order entered 9 February 2011. Defendants appealed the trial court's order by filing a notice of appeal with this Court on 1 March 2011. However, Defendants did not file an appellate brief and, on 2 August 2011, this Court entered an order granting Plaintiff's motion to dismiss Defendants' appeal.

On 25 July 2011, Defendants filed a motion to dismiss Plaintiff's appeal with *this* Court, again asserting jurisdictional default based upon Plaintiff's allegedly defective notice of appeal. In its motion, Defendants cite two defects in Plaintiff's notice of appeal: (1) the notice does not designate the court to which Plaintiff directs its appeal, and (2) Plaintiff's intent to appeal the trial court's 13 May 2010 order cannot be fairly inferred from the language of the notice. Defendants aver these defects render Plaintiff's notice of appeal insufficient to confer appellate jurisdiction upon this Court.

PHELPS STAFFING, LLC v. S.C. PHELPS, INC.

[217 N.C. App. 403 (2011)]

**[1]** "In order to confer jurisdiction on the state's appellate courts, appellants of lower court orders must comply with the requirements of Rule 3 of the North Carolina Rules of Appellate Procedure." *Bailey v. State*, 353 N.C. 142, 156, 540 S.E.2d 313, 322 (2000). Rule 3(d) governs the content of a notice of appeal and requires that "[t]he notice of appeal . . . shall designate the judgment or order from which appeal is taken and the court to which appeal is taken." N.C. R. App. P. 3(d). "The provisions of Rule 3 are jurisdictional, and failure to follow the requirements thereof requires dismissal of an appeal." *Abels v. Renfro Corp.*, 126 N.C. App. 800, 802, 486 S.E.2d 735, 737 (1997). However, "[m]istakes by appellants in following all the subparts of Appellate Procedure Rule 3(d) have not always been fatal to an appeal." *Stephenson v. Bartlett*, 177 N.C. App. 239, 242, 628 S.E.2d 442, 444 (2006). It is well established " 'that a mistake in designating the judgment, or in designating the part appealed from if only a part is designated, should not result in loss of the appeal as long as the intent to appeal from a specific judgment can be *fairly inferred* from the notice and the appellee is not misled by the mistake.' " *Smith v. Indep. Life Ins. Co.*, 43 N.C. App. 269, 274, 258 S.E.2d 864, 867 (1979) (citation omitted) (emphasis added).

In the instant case, Plaintiff's notice of appeal fails to designate "the court to which appeal is taken." This defect is obvious, as Plaintiff's notice of appeal does not designate *any* court as the proper venue for its appeal. Plaintiff's error is a complete omission of the content requirement as set forth in Rule 3(d). However, this Court has liberally construed this requirement and has specifically held that a plaintiff's failure to designate this Court in its notice of appeal is not fatal to the appeal where the plaintiff's intent to appeal can be fairly inferred and the defendants are not misled by the plaintiff's mistake. *See Stephenson*, 177 N.C. App. at 243, 628 S.E.2d at 444-45 (permitting plaintiff to proceed with appeal to this Court despite designating the North Carolina Supreme Court in its notice of appeal). The "fairly inferred" doctrine ensures that a violation of Rule 3(d) results in dismissal only where the appellee is prejudiced by the appellant's mistake. Here, Plaintiff timely filed its notice of appeal with this Court. Defendants could fairly infer Plaintiff's intent to appeal to this Court, as this Court is the only court with jurisdiction over Plaintiff's appeal. Furthermore, Defendants concede they were not misled or prejudiced by Plaintiff's error. Therefore, we conclude Plaintiff's mistake in failing to name this Court in its notice of appeal does not warrant dismissal of Plaintiff's appeal.

Plaintiff also appears to be playing fast and loose with Rule 3(d)'s mandate that a notice of appeal must "designate the judgment or order from which appeal is taken." N.C. R. App. P. 3(d). In its notice, Plaintiff states its intent to appeal the trial court's memorandum of decision and judgment. However, Plaintiff further declares its intent to appeal "any and all interlocutory decisions made and reflected" therein. This ambiguous "catchall" language is problematic in light of the multitude of claims resolved by the trial court in two separate rulings. However, even if this ambiguity raises an issue as to whether Plaintiff's intent to appeal the trial court's 13 May 2010 order can be fairly inferred, Plaintiff has rendered this a moot issue by challenging only the trial court's dismissal of Plaintiff's breach of contract claims against Sheila and Charles Phelps. The trial court disposed of both of these claims in its memorandum of decision and judgment, and Plaintiff's intent to appeal these claims is clearly set forth in its notice of appeal. Whether this Court has jurisdiction over the claims adjudicated by the trial court in its 13 May 2010 order is immaterial, as those claims are not before this Court. Accordingly, we deny Defendants' motion to dismiss and proceed to address the merits of Plaintiff's appeal.

[2] Before reaching the merits, however, we must consider the scope of Plaintiff's appeal. In both its appellate brief and its oral arguments before this Court, Plaintiff assigns error only to the trial court's dismissal of Plaintiff's breach of contract claims against Mr. and Ms. Phelps. Specifically, Plaintiff alleges that Mr. and Ms. Phelps breached the non-competition clause of the Agreement. Thus, Plaintiff has abandoned its remaining claims against Mr. and Ms. Phelps and has abandoned all claims against Defendants SCP, CTP, Ms. Powell, and Mr. Mata. *See* N.C. R. App. P. 28(a) ("The scope of review on appeal is limited to issues so presented in the several briefs. Issues not presented and discussed in a party's brief are deemed abandoned."). As the trial court's memorandum of decision and judgment was a final judgment of the superior court, this Court exercises jurisdiction over Plaintiff's appeal pursuant to North Carolina General Statutes § 7A-27(b) (2009).

### III. Analysis

[3] When reviewing a judgment from a bench trial, "our standard of review 'is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment.'" *Town of Green Level v. Alamance County*, 184 N.C. App. 665, 668-69, 646 S.E.2d 851, 854

(2007) (citation omitted). The trial court's " '[f]indings of fact are binding on appeal if there is competent evidence to support them, even if there is evidence to the contrary.' " *Id.* at 669, 646 S.E.2d at 854 (citation omitted). This Court reviews the trial court's conclusions of law *de novo. Id.*

Plaintiff challenges one factual finding of the trial court. The trial court found "that neither Sheila nor S.C. Phelps, individually or together, entered into competition with Plaintiff in any form, direct or indirect, at any time up to and including the present." Plaintiff asserts this is not a finding of fact, but rather a conclusion of law.

As this Court has recognized, "[t]he classification of a determination as either a finding of fact or a conclusion of law is admittedly difficult." *In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997). Generally, "any determination requiring the exercise of judgment or the application of legal principles is more properly classified a conclusion of law." *Id.* (internal citations omitted). A "determination reached through 'logical reasoning from the evidentiary facts' is more properly classified a finding of fact." *Id.* (citation omitted). We agree with Plaintiff that the trial court's determination concerning whether Ms. Phelps and SCP entered into competition with Plaintiff involves application of legal principles and is appropriately classified as a conclusion of law. We therefore reclassify this determination as a conclusion of law and apply our standard of review accordingly. *See N.C. State Bar v. Key*, 189 N.C. App. 80, 88, 658 S.E.2d 493, 499 (2008) ("[C]lassification of an item within the order is not determinative, and, when necessary, the appellate court can reclassify an item before applying the appropriate standard of review."). We now address the merits of Plaintiff's appeal.

## A. Sheila Phelps

**[4]** Plaintiff contends the trial court erred in determining Ms. Phelps did not breach her obligations under the non-compete clause of the Agreement. We initially note that covenants not to compete "are disfavored by the law." *Med. Staffing Network, Inc. v. Ridgway*, 194 N.C. App. 649, 655, 670 S.E.2d 321, 327 (2009); *see also Kennedy v. Kennedy*, 160 N.C. App. 1, 9, 584 S.E.2d 328, 333 (2003) ("Covenants not to compete restrain trade and are scrutinized strictly."). Nonetheless, a covenant not to engage in a particular business is a valid and enforceable contract provided the geographic and durational restrictions are reasonably necessary to protect the interest of the covenantee. *See Sineath v. Katzis*, 218 N.C. 740, 754, 12 S.E.2d 671, 680 (1941).

**PHELPS STAFFING, LLC v. S.C. PHELPS, INC.**

[217 N.C. App. 403 (2011)]

The parties in the instant case do not dispute the validity of the non-compete clause contained in the Agreement. Plaintiff's challenge rests upon its assertion that the trial court's findings of fact do not support its conclusion of law that Ms. Phelps did not breach her obligations under the Agreement. Specifically, Plaintiff contends Ms. Phelps breached the non-compete clause by (1) holding a pecuniary interest in Plaintiff's competitor, CTP, and (2) providing financial and other support to CTP.

Plaintiff cites our Supreme Court's ruling in *Finch Brothers v. Michael*, 167 N.C. 322, 83 S.E. 458 (1914), as support for its proposition that a party violates a non-compete agreement by holding a pecuniary interest in a competitor of the party protected by the agreement. In *Finch*, the court stated:

> the defendant has no pecuniary interest in the [competing entity], either directly or indirectly, as member, manager, agent, or otherwise, for he is only a creditor of the partnership, which is a very different thing from conducting the business or being interested therein. In a sense, he may be considered as having some concern for its success as its creditor, but this is all, and is not sufficient to constitute a breach of his contract, either under the sale of the good will or the restrictive covenant.

167 N.C. at 324, 83 S.E. at 460. The court's language makes clear that holding a pecuniary interest in a competitor of the protected party is not a *per se* breach of a covenant not to compete. Black's Law Dictionary defines a financial or "pecuniary interest" as "an interest involving money or its equivalent; esp., an interest in the nature of an investment." BLACK'S LAW DICTIONARY 829, 1167 (8th ed. 2004). Clearly, both a creditor and a manager of a business have a pecuniary interest in the business, yet, only the interest held by the latter constitutes a breach of a non-compete agreement. *See Finch*, 167 N.C. at 324, 83 S.E. at 460. Therefore, it is the *nature* of the pecuniary interest taken by the covenantor that is critical in determining whether the covenantor has breached its agreement to refrain from entering into competition with the covenantee. Serving as a creditor does not amount to a breach because, as the court implied in *Finch*, a creditor's interest does not constitute a stake in the competing entity's success sufficient to constitute a breach. *See id.* On the other hand, taking stock in, organizing, or managing a corporation formed to compete with the protected party is a clear breach of the covenantor's promise not to compete. *Sineath*, 218 N.C. at 755, 12 S.E.2d at 681; *see also Kramer v. Old*, 119 N.C. 1, 25 S.E. 813 (1896) (holding

defendants breached non-compete covenant by forming and holding stock in competing corporation).

In the case *sub judice*, Ms. Phelps covenanted under the Agreement not to "directly and/or indirectly Compete with [Plaintiff] . . . through any entity owned or managed, in whole or in part, by [Ms. Phelps], for a period of [5 years] from the date of [the] Agreement within the Prohibited Territory." The trial court found as fact that CTP has been competing with Plaintiff since December 2008. The trial court also determined that CTP has been paying some of Ms. Phelps' personal expenses since February 2009. In light of these factual findings, which Defendant does not dispute, Plaintiff contends the trial court erred by concluding as a matter of law that Ms. Phelps did not breach her obligations under the Agreement. We cannot agree, as Ms. Phelps' "interest" in CTP is not the type of prohibited pecuniary interest contemplated by the precedent of our Courts.

The record indicates that Ms. Phelps has held no stock or other financial stake in CTP since its incorporation in 2007. Nor has Ms. Phelps participated as a manager, employee, or agent of CTP. In fact, it appears Ms. Phelps had been attempting to disassociate herself from the contract labor staffing business for years prior entering into the Agreement with Plaintiff. Plaintiff asserts Ms. Phelps "shares in the profits" of CTP because CTP has paid her personal expenses, including mortgage payments, credit card payments, and utility bills. This contention is without merit, as there is no legal nexus between CTP's profits and the benefits CTP has conferred upon Ms. Phelps. Ms. Phelps has no entitlement to these payments. Quite the opposite, these payments are entirely within the discretion of Mr. Phelps. We note that many of the payments at issue, such as the mortgage payments, have been made for the benefit of *both* Mr. and Ms. Phelps, who, until 2008, lived together as a married couple for many years. Furthermore, this Court fails to see how Ms. Phelps' receipt of these benefits assists CTP in competing with Plaintiff. Nor do we see how Plaintiff is injured by these payments.[8] We hold Ms. Phelps' "interest" in CTP does not amount to direct or indirect competition with Plaintiff, and the trial court correctly concluded that Ms. Phelps' receipt of these payments does not amount to a breach of her obligations under the Agreement.

---

8. While not necessary to our holding, we note that Plaintiff's claim for damages appears speculative in this respect.

Plaintiff further contends Ms. Phelps breached the non-compete clause by providing financial and other assistance to CTP. Plaintiff cites the trial court's findings that (1) SCP made office rental payments on CTP's behalf through January 2009, (2) SCP transferred confidential data sets to CTP when Ms. Powell installed the accounting software on CTP's computer, (3) CTP took over payments on SCP's fax machine and copier, and (4) CTP used SCP's fax number and phone number when it began competing with Plaintiff. Plaintiff concludes: "The bottom line is that, at the very least, paying the rent for a competitor must be direct or indirect assistance."

Plaintiff's argument is misplaced. Ms. Phelps, through SCP, leased the office space located at Bickett Boulevard to conduct SCP's business. Plaintiff asserts that SCP made these payments "from August 2008 through the end of January 2009, when C T Phelps was in direct competition with Plaintiff." Plaintiff's recitation of the trial court's factual findings is inaccurate. The trial court found that Mr. Phelps *intended* to return to the contract labor staffing business in October 2008, and Mr. Phelps did not actually begin competing with Plaintiff until December 2008. At most, SCP made rental payments on CTP's behalf while CTP was competing with Plaintiff from December 2008 through January 2009. In light of the relationship between Mr. and Ms. Phelps, one month represents a reasonable period for transition of the office space from SCP to CTP. CTP assumed payments on the lease in February 2009, after the transition was complete. This is competent evidence from which the trial court could conclude that Ms. Phelps made these rental payments to further SCP's business, not to assist CTP in competing with Plaintiff.

Furthermore, we conclude that Ms. Phelps did not breach her obligations under the Agreement when Ms. Powell transferred SCP's old data sets to CTP through installation of accounting software on a CTP computer. As the trial court found and Plaintiff concedes, Ms. Phelps did not participate and had no knowledge of this transaction. Plaintiff's remaining contentions on this issue are without merit. Accordingly, we hold the trial court correctly concluded Ms. Phelps did not breach her obligations under the non-compete clause of the Agreement.

**B. Charles Phelps**

The parties agree Mr. Phelps did not sign the Agreement. Nonetheless, Plaintiff urges this Court to find that Mr. Phelps, as the "true owner" of SCP, was bound by the non-compete clause and

breached said clause by entering into competition with Plaintiff. Plaintiff cites a Montana Supreme Court decision, *Bolz v. Myers*, 651 P.2d 606 (Mont. 1982), in support of its position. We initially note that *Bolz* is not binding authority upon this Court. More importantly, we conclude *Bolz* is distinguishable from the instant case and is therefore unpersuasive.

In *Bolz*, Defendant Mason Myers met with Plaintiff Dale Bolz to negotiate the purchase of a hearing aid center by Mr. Bolz. *Id.* at 608. Mr. Myers' wife, Merle, and son, Michael, were present at this meeting. *Id.* Later, when the parties executed the sale of the hearing aid center, only Merle and Michael signed as sellers. *Id.* Mr. Myers did not sign the purchase agreement, which included a non-compete clause. *Id.* The Montana Supreme Court held that Mr. Myers was the true owner of the business and was therefore bound by the purchase agreement. *Id.* at 612.

We agree with Plaintiff that there are factual similarities between *Bolz* and the case before this Court. However, we cannot agree with Plaintiff's assertion that the facts of *Bolz* "are, obviously, virtually identical in substance" to the facts found by the trial court in the instant case. Two critical facts distinguish *Bolz* from the instant case. First, "Bolz expressed a concern as to what would keep Myers from going into competition with him, and Myers *gave him an oral assurance that he had no intent to do so." Id.* at 608 (emphasis added). Second, the *Bolz* court determined based upon a series of proposed contracts exchanged between the parties that the parties considered Mr. Mason the owner of the business. *Id.*

Here, Mr. El-Kaissi knew through negotiations with Mr. and Ms. Phelps that Ms. Phelps was the sole owner of SCP. Mr. El-Kaissi also knew Mr. Phelps had a background in the contract labor business and might pose a threat to his business. Mr. El-Kaissi demonstrated his concern when he asked Mr. Phelps to sign a non-compete agreement in conjunction with the sale of SCP. Mr. Phelps stated he was unwilling to sign a non-compete agreement. Unlike the defendant in *Bolz*, Mr. Phelps gave no assurance that he would not enter into competition with Plaintiff. Mr. El-Kaissi made a business decision and proceeded with consummation of the Agreement. Based on these facts, we must agree with the trial court's conclusion that Mr. El-Kaissi assumed the risk that Mr. Phelps might enter into competition with Plaintiff. Plaintiff's assignment of error is overruled.

CHANDLER v. ATL. SCRAP & PROCESSING

[217 N.C. App. 417 (2011)]

### IV. Conclusion

For the foregoing reasons, we hold there was sufficient competent evidence from which the trial court could conclude that neither Ms. Phelps nor Mr. Phelps breached the Agreement. The trial court's memorandum of decision and judgment is hereby

Affirmed.

Judges THIGPEN and MCCULLOUGH concur.