An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-978

Filed: 1 September 2015

Guilford County, Nos. 13 CRS 23120, 13 CRS 75720

STATE OF NORTH CAROLINA,

v.

WILLIAM THOMAS GLASCO, Defendant.

Appeal by defendant from judgment entered 28 March 2014 by Judge Susan Bray in Guilford County Superior Court. Heard in the Court of Appeals 22 January 2015.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Iain M. Stauffer, for the State.*

> *Richard J. Costanza for defendant-appellant.*

GEER, Judge.

Defendant William Thomas Glasco appeals from a judgment entered on his convictions of first degree burglary, attempted common law robbery, and being a habitual felon. On appeal, defendant primarily argues that his trial counsel provided ineffective assistance of counsel ("IAC") by conceding his guilt in violation of *State v. Harbison*, 315 N.C. 175, 337 S.E.2d 504 (1985). Based on our review of trial counsel's closing arguments, we disagree. However, we agree with defendant – and the State

concedes – that the trial court erred in accepting defendant's mere stipulation to being a habitual felon. Therefore, we vacate defendant's conviction of being a habitual felon, vacate defendant's sentence, and remand for further proceedings.

Facts

The State's evidence tended to show the following facts. Defendant and George Creft met each other sometime between April and October 2012 at a substance abuse recovery program where they were roommates and became friends. After finishing the program, defendant and Mr. Creft moved out of the program's shelter and moved into different houses in High Point, North Carolina. Mr. Creft found a housemate, Sarah Bynam, and defendant began living with his girlfriend. Defendant had two neighbors, David and Brian, who were often over at defendant's house. After parting ways from the shelter, defendant and Mr. Creft kept in touch.

In early April 2013, Mr. Creft approached defendant about purchasing a bag of 100 Percocet pills for $100.00. On 12 April 2013, Mr. Creft went over to defendant's house accompanied by a man named Terry who had the pills. Terry showed defendant the bag of pills, and defendant purchased the bag from Terry for $100.00. After Terry and Mr. Creft left defendant's house, defendant recognized that the pills were not real Percocet and became upset.

Defendant, Brian, and David went to Mr. Creft's house to try and retrieve $100.00 from Mr. Creft that afternoon, but only Ms. Bynam was home. Defendant

told Ms. Bynam that if Mr. Creft did not get in touch with him, defendant would return for Mr. Creft. Defendant and his companions then left. After Ms. Bynam contacted Mr. Creft and told him that defendant was looking for him, Mr. Creft called defendant and told defendant that he did not know the pills were counterfeit. Mr. Creft said he would repay defendant when Mr. Creft received his paycheck, but defendant demanded that Mr. Creft return the money immediately.

Later that evening, at around 9:00 p.m., defendant, David, and Brian returned to Mr. Creft's house. They broke windows, kicked the door in, and entered the house. Defendant went into Ms. Bynam's room, picked up a television and other items, and threw them on the floor. Although Mr. Creft was hiding in a locked bathroom, defendant kicked in the bathroom door, dragged Mr. Creft out, and beat him. Defendant, David, and Brian then picked Mr. Creft up by his arms and legs and threw him off his front porch. Mr. Creft sustained injuries to his head, elbow, back, and legs. Defendant and his companions left, and Ms. Bynam called 911.

Defendant was arrested later that evening at his house and gave a statement to Officer Stephen Finn of the High Point Police Department. He was indicted for first degree burglary, attempted common law robbery, second degree kidnapping, and being a habitual felon.

At trial, defendant testified that he never purchased the pills from Mr. Creft and that when Mr. Creft was showing defendant the pills, Mr. Creft stole $350.00

from defendant which defendant needed that day to pay rent. According to defendant, after Mr. Creft left defendant's house at around 2:30 or 3:00 p.m., defendant and his girlfriend went to Mr. Creft's house looking for Mr. Creft, but only Ms. Bynam was home. Ms. Bynam let them in the house, and after defendant and his girlfriend talked with Ms. Bynam for a few minutes, they left.

Later in the afternoon, after defendant had returned home, Mr. Creft again arrived at defendant's house. Defendant stated that he hit Mr. Creft in the head with his fist when they were in defendant's front yard, and Mr. Creft left. Defendant testified that he went looking for Mr. Creft at his house again at about 7:00 p.m. that evening, but because Mr. Creft's van was not at the house, defendant did not try to go inside, but rather drove back to his own home. Defendant maintained that he was nowhere near Mr. Creft's residence at 9:00 p.m., around the time of the reported burglary. On cross-examination, defendant denied that he made any statement to Officer Finn admitting that he went to Mr. Creft's house and hit him there.

The jury found defendant guilty of first degree burglary, attempted common law robbery, and misdemeanor false imprisonment. Defendant then "stipulate[d]" to being a habitual felon. On 28 March 2014, the trial court consolidated defendant's convictions into a single judgment and sentenced him as a habitual felon to a presumptive-range term of 120 to 156 months. Defendant timely appealed to this Court.

Discussion

As an initial matter, we address defendant's amended petition for writ of certiorari. Defendant points out that trial counsel's notice of appeal was defective in several respects, including its failure to name the court being appealed to, its specification of file numbers other than the one applicable to the judgment being appealed, and the lack of any evidence that the notice of appeal was ever served on the State. *See* N.C.R. App. P. 4. In *State v. Ragland*, ___ N.C. App. ___, ___, 739 S.E.2d 616, 620 (quoting *Hale v. Afro-Am. Arts Int'l, Inc.*, 335 N.C. 231, 232, 436 S.E.2d 588, 589 (1993)), *disc. review denied,* 367 N.C. 220, 747 S.E.2d 548 (2013), this Court recognized that " 'a party upon whom service of notice of appeal is required may waive the failure of service by not raising the issue by motion or otherwise and by participating without objection in the appeal.' " Here, the State has not raised the issue of lack of service and has participated without objection in the appeal. Therefore, the State has waived any objection to any service defect.

With respect to the remaining defects, this Court has also recognized " 'that [an appellant's] failure to designate this Court in its notice of appeal is not fatal to the appeal where the [appellant's] intent to appeal can be fairly inferred and the [appellees] are not mislead [sic] by the [appellant's] mistake.' " *Id.* (quoting *Phelps Staffing, LLC v. S.C. Phelps, Inc.*, 217 N.C. App. 403, 410, 720 S.E.2d 785, 791 (2011)). Here, the purported notice of appeal is labeled "NOTICE OF APPEAL," and it is clear

that defendant intended to appeal his convictions with that document -- this Court is the only court to which an appeal lies. Moreover, the State does not contest the propriety of the notice of appeal in any way. Accordingly, we conclude that defendant's purported notice of appeal was not fatally defective.

I

Defendant first argues that he received IAC because, he contends, his trial counsel's closing statement effectively conceded that defendant was involved with the breaking and entering into Mr. Creft's house. "A defendant's [Sixth Amendment] right to counsel includes the right to the effective assistance of counsel." *State v. Braswell*, 312 N.C. 553, 561, 324 S.E.2d 241, 247 (1985). To show IAC, a defendant must satisfy a two part test.

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, *a trial whose result is reliable.*"

*Id.* at 562, 324 S.E.2d at 248 (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984)).

In *Harbison*, 315 N.C. at 180, 337 S.E.2d at 507-08, our Supreme Court held that a criminal defendant establishes IAC per se when he shows that "the defendant's

counsel admits the defendant's guilt [of a crime charged] to the jury without the defendant's consent." However, this Court has recognized that "merely a hypothetical statement" that under certain circumstances a defendant could be found guilty of a crime is "not an admission" for purposes of *Harbison*. *State v. Wilson*, ___ N.C. App. ___, ___, 762 S.E.2d 894, 897 (2014). Moreover, " 'statements contained in closing arguments to the jury are not to be placed in isolation or taken out of context on appeal. Instead, on appeal we must give consideration to the context in which the remarks were made and the overall factual circumstances to which they referred.' " *State v. Thompson*, 359 N.C. 77, 110, 604 S.E.2d 850, 873 (2004) (quoting *State v. Green*, 336 N.C. 142, 188, 443 S.E.2d 14, 41 (1994)).

Here, the trial counsel's closing argument included the following:

> So we have this break-in. I would submit there was a break-in. I submit that there is multiple individuals involved. I submit that whatever version you heard as far as [Mr. Creft's] injuries were concerned, that all happened. *Just [defendant] wasn't involved with this.* He wasn't the ring leader. He wasn't the one that was going about trying to exact punishment for the wrongdoing that . . . he charged [Mr. Creft] with. . . .
>
> Let's talk about -- or let's consider what the defendant's testimony indicated. He says that [Mr. Creft] came over, they talked, the money was gone. . . . These guys knew each other. He testifies, later on, [Mr. Creft] comes back over. . . .
>
> So he punches him in the mouth, he causes an injury to him, and [Mr. Creft] leaves. He goes and tries to track him down. First, he tries to call him after he finds out the

money is missing. He can't get ahold of him. He's frustrated, he's angry. That's his admission. I mean, $350 is a lot of money according to what his version of events is.

And he tries to track him down. . . . He goes to [Mr. Creft's] house. [Ms. Bynam] is there. She says he's not there. He says, again, this wasn't about the pills. . . . He has a couple of guys with him. And then he leaves. He tries to track [Mr. Creft] down looking at his other places that he might, including an AA meeting location. He can't find him, and he says he goes home.

. . . .

. . . Now, according to [defendant], he gives a statement [to the police] saying yeah, I was angry, I went over to beat him up, I hit him, I beat him, *but that was at my house, not at his house in the middle of the night. . . .*

. . . .

. . . Bottom line is, [*defendant*] *said that he didn't admit to anything other than going over* [*to Mr. Creft's*] *that night -- that day, the previous day*.

. . . [T]he Judge is going to instruct you as to each and every one of the elements of the felonies that [defendant] is charged with, and *the key here is intent, intent to commit a felony when it comes to the burglary . . . .* And specifically, as far as the burglary is concerned, the breaking and entering was during the nighttime. It was occupied. Most of this is satisfied by the facts of the case. That at the time of the breaking and entering -- yeah, the breaking and entering, the defendant intended to commit common law robbery and/or second degree kidnapping within the dwelling. *So that's the key, is that intent. Now, if you believe the version -- any version, he is trying to recover money.*

So both of those charges require the existence of the common law robbery, or the intent to commit a common law robbery, and *I would submit to you that that element is missing in both of those particular felonies* because the common law robbery doesn't exist.

. . . At the end of the day, after you have considered everything, I submit to you that there is credibility issues here, that the state hasn't proven each and every one of the elements of these particular charges, *and that* [*defendant*] *should be found not guilty.*

(Emphasis added.)

Defendant contends that his trial counsel's closing statements amounted to a concession like the ones made in *Harbison* and *State v. Matthews*, 358 N.C. 102, 591 S.E.2d 535 (2004). *Harbison* held that the following statement by the defendant's trial counsel to the jury amounted to such a concession:

"Ladies and Gentlemen of the Jury, I know some of you and have had dealings with some of you. I know that you want to leave here with a clear conscious [sic] and I want to leave here also with a clear conscious [sic]. I have my opinion as to what happened on that April night, and I don't feel that [the defendant] should be found innocent. I think he should do some time to think about what he has done. *I think you should find him guilty of manslaughter* and not first degree."

315 N.C. at 177-78, 337 S.E.2d at 506 (emphasis added). *Matthews* held that a defendant's trial counsel rendered IAC by conceding his guilt to a lesser-included offense than the one with which he was charged. 358 N.C. at 109, 591 S.E.2d at 540-41. Trial counsel in *Matthews* did so by stating to the jury, " 'You have a possible

verdict of guilty of second-degree murder. And then the third possibility is not guilty. . . . [T]his is probably the first time I've come up in front of the jury and said *you ought not to even consider that last possibility.* . . . I'm not saying you should find [the defendant] not guilty. . . . *I'm telling you in this case you ought not to find him not guilty because he is guilty of something. . . . When you look at the evidence . . . you're going to find that he's guilty of second-degree murder.'*" 358 N.C. at 106, 591 S.E.2d at 539 (second emphasis added).

In further support of his argument that this case is like *Harbison* and *Matthews*, defendant points to his trial counsel's statement that the element that a "breaking and entering was during the nighttime . . . is satisfied by the facts of the case." Defendant also points to the State's closing remarks in which the prosecution commented on the trial counsel's closing remarks: "Yes, someone clearly broke into [Mr. Creft's] house. . . . [Defendant's trial counsel] said it right at the end. . . . So we all agree that a crime happened." The trial counsel's statement, however, does not identify defendant as the perpetrator of a break-in, leaving open the question of who was the perpetrator of the break-in at Mr. Creft's house. Also in the closing argument, defendant's trial counsel emphasized the fact that defendant only admitted at trial and to Officer Finn to going to Mr. Creft's house during the daytime. He also argued to the jury that defendant "wasn't involved in this [break-in]."

Defendant, however, also points to his counsel's arguments that he lacked the required intent. When the trial counsel's remarks are read in their totality, it is apparent that defense counsel was acknowledging that the evidence presented two different versions of what occurred. He then simply argued that even if the jury believed Mr. Creft's version and not defendant's version of what occurred, the State had still not met its burden of proof. Counsel presented a hypothetical to the jury: if they chose to believe the evidence that defendant was the one who broke into Mr. Creft's house, they should still find defendant not guilty of burglary because he had no intent to commit a felony, such as robbery, when he broke in.

Unlike the arguments made in *Harbison* and *Matthews*, the closing argument here, when read in its totality, did not admit that *defendant* was necessarily guilty of the break-in or of any lesser-included offense to burglary. Because trial counsel's closing arguments did not concede defendant's guilt, defendant has failed to establish that he received IAC.

II

Defendant also contends, and the State concedes, that the trial court erred in sentencing defendant as a habitual felon based on his "stipulation" that he had attained habitual felon status. In doing so, the trial court violated the mandatory procedure set forth in N.C. Gen. Stat. § 15A-1022 (2013).

N.C. Gen. Stat. § 14-7.5 (2013) provides that "[i]f the jury finds the defendant guilty of a felony, the bill of indictment charging the defendant as an habitual felon may be presented to the same jury. Except that the same jury may be used, the proceedings shall be as if the issue of habitual felon were a principal charge." This Court has explained that a defendant may either submit the issue whether he is a habitual felon to the jury or, "in the alternative, enter a guilty plea to the charge of being an habitual felon." *State v. Wilkins*, ___ N.C. App. ___, ___, 737 S.E.2d 791, 795 (2013).

N.C. Gen. Stat. § 15A-1022(a) requires the trial court, before accepting a guilty plea, to address the defendant by "personally" informing him, among other things, of the nature of his charges and maximum associated sentences. "[A] defendant's stipulation to habitual felon status[,] 'in the absence of an inquiry by the trial court to establish a record of a guilty plea [pursuant to N.C. Gen. Stat. § 15A-1022], is not tantamount to a guilty plea.' " *Wilkins*, ___ N.C. App. at ___, 737 S.E.2d at 795 (quoting *State v. Gilmore*, 142 N.C. App. 465, 471, 542 S.E.2d 694, 699 (2001)).

Here, following the jury's verdicts finding defendant guilty of first degree burglary, attempted common law robbery, and false imprisonment, trial counsel advised the trial court, "[W]e are stipulating to the habitual status of my client based on the prior convictions." After hearing from the prosecutor and receiving certified copies of defendant's previous felony judgments, a prior record level worksheet, and

a victim impact statement, the trial court sentenced defendant as a habitual felon because "[h]e has admitted his status as a habitual felon." At no point was the issue of defendant's habitual felon status submitted to the jury, nor did the trial court make the required inquiries under N.C. Gen. Stat. § 15A-1022(a) for accepting a guilty plea to being a habitual felon. We agree with defendant and the State that defendant's conviction of attaining habitual felon status, and the sentence based on that status, were improperly entered. Consequently, we vacate defendant's conviction of being a habitual felon and remand for further proceedings on the habitual felon charge and for resentencing.

NO ERROR IN PART; VACATED AND REMANDED IN PART.

Judges STEPHENS and DILLON concur.

Report per Rule 30(e).