An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1052

Filed 5 November 2025

Mecklenburg County, No. 22CVS019843-590

STREAM REALTY PARTNERS – CHARLOTTE, L.P., Plaintiff,

v.

LEVINE PROPERTIES, INC.; 8310 MCALPINE, LLC; 8510-8514 MCALPINE, LLC; 8600 MCALPINE, LLC; and 8601 MCALPINES, LLC., Defendants.

Appeal by defendant from judgment entered 17 April 2024 by Judge Reggie McKnight in Mecklenburg County Superior Court. Heard in the Court of Appeals 21 May 2025.

> *Allen, Chesson & Grimes PLLC, by Benjamin S. Chesson and Anna C. Majestro, for plaintiff.*

> *James, McElroy & Diehl, P.A., by Preston O. Odom, III, John R. Buric, and John R. Brickley, for defendants.*

FREEMAN, Judge.

Defendant 8600 McAlpine, LLC appeals from the trial court's award of damages following the entry of judgment in favor of plaintiff, arguing that the trial court miscalculated the amount of damages owed. Defendant also filed a petition for

STREAM REALTY PARTNERS – CHARLOTTE, L.P. V. LEVINE PROPERTIES, INC.

*Opinion of the Court*

writ of certiorari to appeal the trial court's denial of defendant's subsequent Rule 60(b) and Rule 62(d) motions. We deny the petition for writ of certiorari and reverse the award of damages and remand for further proceedings.

## I. Factual and Procedural Background

Defendant 8600 McAlpine, LLC is one of several properties that constitute McAlpines Business Centre, which is managed by Levine Properties, Inc.[1] In August 2021, these entities entered into an "exclusive leasing agreement" with plaintiff. Plaintiff was hired to be the exclusive broker to find tenants for each of the properties. The exclusive leasing agreement provided:

> Owner [McAlpines Business Centre properties] agrees to pay Broker [plaintiff], and Broker agrees to accept as its entire and exclusive compensation for its services rendered hereunder, if any, a commission for each new Lease of any space in the property (a "Tenant Space"), or an expansion of an existing Tenant Space (whether such expansion is effected pursuant to an option included in the applicable Lease, or by amendment thereto or otherwise) as follows:
>
> (a) If no Registered Broker (as defined below) is involved in leasing the Tenant Space in question, 4.00% of the Basic Rental (defined below) is payable under such Lease for the first ten (10) years of the lease term; or
>
> (b) If a Registered Broker is involved in leasing the Tenant Space in question, 2.00% of the Basic Rental payable under such Lease for the first ten (10) years of the lease term.
>
> Owner shall be responsible for all commissions due any

---

[1] During the trial proceedings, plaintiff voluntarily dismissed its claims against 8310 McAlpine, LLC, 8510-8514 McAlpine, LLC, and 8601 McAlpines, LLC without prejudice. The trial court dismissed plaintiff's claims against Levine Properties, Inc. with prejudice. Accordingly, 8600 McAlpine, LLC is the only defendant subject to this appeal.

STREAM REALTY PARTNERS – CHARLOTTE, L.P. v. LEVINE PROPERTIES, INC.

*Opinion of the Court*

> Registered Broker and other outside brokers involved in or claiming involvement in the leasing of any Tenant Space or the expansion thereof, or the renewal or extension of the term of any Lease. As used herein, a "Registered Broker" means an outside broker which (1) has entered into a separate brokerage agreement with Owner, and (2) has actively participated in the negotiation of a Lease, the agreement to expand a Tenant Space, or the agreement to renew or extend the term of a Lease.
>
> 3. Basic Rental. Subject to the following sentence, as used in this Agreement, the term "Basic Rental" shall mean all amounts payable by the tenant under a Lease throughout the initial term thereof, including (without limitation) all base rents and license fees. Basic Rental shall not include . . . (b) parking rentals . . . .

On 16 August 2022, defendant found a tenant for the property without using plaintiff's services. The lease agreement provided that the "Base Rent for the Premises during the First Year Lease will be $695,000 per year and will increase by four percent (4%) on the first (1st) day of each Lease Year thereafter." The lease specified that the base rent consisted of the "Base Building Rent," which was $666,527.44 per month for the first year, and the "Base Parking Parcel Rent" of $28,472.56 per month for the first year.

On 6 December 2022, plaintiff sued all defendants for breaching the exclusive leasing agreement. Plaintiff alleged that it should recover the amount of commission it would have made under the agreement, which plaintiff maintained was 4.00% of the basic rental. Defendant admitted that it owed plaintiff a commission but maintained that it owed 2.00% of the basic rental, which was $160,048.00. On 30

STREAM REALTY PARTNERS – CHARLOTTE, L.P. V. LEVINE PROPERTIES, INC.

*Opinion of the Court*

August 2023, plaintiff moved for summary judgment. That same day, defendant sent plaintiff a check for $160,048.00, the undisputed portion of plaintiff's commission. On 28 September 2023, plaintiff cashed the check.

On 12 October 2023, the summary judgment hearing took place before the Honorable Alan Thornburg in Mecklenburg County Superior Court. Plaintiff argued that "judgment should be entered against [defendant] in the amount of $320,096," and stated that "the only real question on damages is that parking lot, which we're not asking the Court to consider for summary judgment." Defendant reiterated that it owed 2.00% of the commission, and informed the trial court that it "tendered a check for the 2.00%, which [plaintiff] ha[s] not cashed[.]" The trial court concluded that defendant breached the exclusive leasing agreement but did not determine the amount of damages owed. Defendant did not appeal the trial court's order granting summary judgment.

On 31 October 2023, the matter came on for bench trial before Honorable Reggie McKnight in Mecklenburg County Superior Court to determine the amount of damages. The parties continued to contest whether the amount of damages should be 2.00% or 4.00% of the basic rental. They also disputed whether the calculation of damages included the base parking parcel rent. Plaintiff contended that the lease specified the base rent was $695,000, so that amount should be used to calculate damages. Defendant, on the other hand, maintained that the base rent included a parking rental, which was prohibited from being used to calculate plaintiff's

STREAM REALTY PARTNERS – CHARLOTTE, L.P. V. LEVINE PROPERTIES, INC.

*Opinion of the Court*

commission in the exclusive leasing agreement. Specifically, Levine Properties manager Daniel Levine, when discussing the base parking parcel rent, testified that the lease "clearly identifies the parking rental." On cross-examination, plaintiff's witness Daniel Farrar, managing partner of Stream Realty, testified to the following:

> Q: . . . So the leasing agreement does not permit the parking rent to be utilized to calculate commissions. Are we in agreement on that? That's what it says in paragraph 3, correct? Excluding parking rent; correct?
>
> A: It does say that, yes.
>
> Q: And the $695 that you're using includes the parking rent; correct?
>
> A: Correct. As it's listed in the base rent section of the lease.

In its 17 April 2024 written findings of fact and conclusions of law, the trial court found that the total rent over ten years was $8,344,244.45 including the parking parcel rental, and $8,002,399.85 excluding the parking parcel rental. The trial court concluded that plaintiff was entitled to "4[.00]% of the base rent of the Lease as damages for [defendant's] breach of the Exclusive Leasing Agreement[.]" The trial court further concluded that "the appropriate base rent amount for calculating the 4[.00]% [plaintiff] is owed as damages is $ 8,344,244.45[,]" which was the amount including the parking parcel rent. Thus, plaintiff was "entitled to damages from [defendant] in the principal amount of $333,769.78 for [defendant's] breach of the Exclusive Leasing Agreement." The trial court entered its judgment against

STREAM REALTY PARTNERS – CHARLOTTE, L.P. v. LEVINE PROPERTIES, INC.

*Opinion of the Court*

defendant the same day. On 17 May 2024, defendant appealed the trial court's judgment.

On 23 August 2024, plaintiff filed a partial payment on the judgment to reflect the $160,048.00 already paid by defendant and sought a writ of execution on the remainder of the judgment. On 6 September 2024, defendant filed a motion to set aside the judgment and a motion to stay execution on the judgement pursuant to section 1A-1, Rules 60(b) and 62(d) of our General Statutes. The hearing on these motions took place before the Honorable Justin N. Davis in Mecklenburg County Superior Court on 12 October 2024. On 23 October 2024, defendant filed a motion to relinquish jurisdiction with the Court of Appeals. We denied the motion on 12 November 2024. On 6 January 2025, the trial court denied defendant's Rule 60 and Rule 62 motions.[2]

## II. Jurisdiction

This court has jurisdiction to review "any final judgment of a superior court[.]" N.C.G.S. § 7A-27(b)(1). Accordingly, we have jurisdiction to review the trial court's judgment with respect to the trial court's judgment for damages.

## III. Standard of Review

---

[2] Defendant filed a petition for writ of certiorari seeking review of the trial court's denial of its Rule 60(b) and 62(d) motions. Certiorari is a discretionary writ governed by a two-part test. *See Cryan v. Nat'l Council of Young Men's Christian Ass'ns of U.S.*, 384 N.C. 569, 577–73 (2023). In our discretion, we deny defendant's petition for the writ of certiorari and only address the issue properly before us on this appeal.

STREAM REALTY PARTNERS – CHARLOTTE, L.P. V. LEVINE PROPERTIES, INC.

*Opinion of the Court*

"When reviewing a judgment from a bench trial, our standard of review is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment." *S. Seeding Serv., Inc. v. W.C. English, Inc.*, 217 N.C. App. 300, 303 (2011) (cleaned up). "Findings of fact are binding on appeal if there is competent evidence to support them, even if there is evidence to the contrary." *Sessler v. March*, 144 N.C. App. 623, 628 (2001) (citation omitted). "Unchallenged findings of fact are presumed correct and are binding on appeal." *In re Schiphof*, 192 N.C. App. 696, 700 (2008). "We review de novo the trial court's conclusions of law." *Town of Green Level v. Alamance Cnty.*, 184 N.C. App. 665, 669 (2007) (cleaned up).

## IV.    Discussion

Defendant contends the trial court erred by including the base parking parcel rent in calculating the damages for the commission owed to plaintiff. Specifically, defendant contends that the base parking parcel rent is a parking rental that was expressly prohibited from being used to calculate plaintiff's commission by the exclusive leasing agreement.

When interpreting the terms of a contract, we must read it "in a manner that gives effect to all of its provisions, if the court is reasonably able to do so." *Johnston Cnty. v. R.N. Rouse & Co.*, 331 N.C. 88, 94 (1992) (citation omitted). "However, we also must interpret a contract by its plain language when possible." *Bilfinger Inc. v. Cargill, Inc.*, 915 S.E.2d 200, 206 (N.C. Ct. App. 2025). *See also Woods v. Nationwide*

STREAM REALTY PARTNERS – CHARLOTTE, L.P. V. LEVINE PROPERTIES, INC.

*Opinion of the Court*

*Mut. Ins.*, 295 N.C. 500, 506 (1978) ("If the meaning of" a contract "is clear and only one reasonable interpretation exists courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein."); *Morrell v. Hardin Creek, Inc.*, 371 N.C. 672, 686 (2018) (stating courts must interpret contracts as to "enforce the parties' intent as evidenced by the clear and explicit language of the [agreement].").

Here, the exclusive leasing agreement provided that plaintiff's commission was calculated using "all base rents," but expressly excluded "parking rentals" from the calculation. The lease that defendant entered into identified that the total base rent was $695,000 for the first year, but explicitly identified that $28,472.56 of the total base rent was the "base parking parcel rent." Interpreting the plain language of these agreements, parking rentals are prohibited from being used to calculate the amount plaintiff's commission. Therefore, the trial court erred by concluding that the amount to calculate the base rent included the base parking parcel rent. Based on the provisions of both agreements, the trial court should have used the ten-year rental total without the base parking parcel rent—$8,002,399.85. Accordingly, plaintiff's damages should be 4.00% of this amount. Therefore, we reverse the trial court's judgment and findings of fact and conclusions of law and remand this matter for the trial court to correct the amount of damages that defendant owes.

### V. Conclusion

STREAM REALTY PARTNERS – CHARLOTTE, L.P. v. LEVINE PROPERTIES, INC.

*Opinion of the Court*

The trial court erred in concluding the amount that defendant owed plaintiff in damages included a parking rental, as expressly prohibited by the exclusive leasing agreement.  Therefore, we reverse the trial court's judgment and findings of fact and conclusions of law and remand for the trial court to correct the amount of damages owed in a manner consistent with this opinion.

REVERSED AND REMANDED.

Judges ZACHARY and GORE concur.

Report per Rule 30(e).